The **WADLYN CORPORATION**, et al.

v.

**CITY OF KNOXVILLE**, et al.

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Sept. 15, 2008 Session.

Dec. 23, 2008.

Permission to Appeal Denied by Supreme Court Aug. 24, 2009.

Arthur G. Seymour, Jr. and Benjamin C. Mullins, Knoxville, Tennessee, for the Appellants, The Wadlyn Corporation and Camdun Realty I, LLC.

Charles W. Swanson, Elizabeth A. Ward, and Sharon E. Boyce, Knoxville, Tennessee, for the Appellants, City of Knoxville and the Knoxville City Council.

## OPINION

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and SHARON G. LEE, SP. J., joined.

The Wadlyn Corporation ("Wadlyn") and Camdun Realty I, LLC ("Camdun") sued the City of Knoxville ("City") and the Knoxville City Council ("City Council") concerning the City Council's reversal of the Knox County Metropolitan Planning Commission's ("MPC") approval of a Concept Plan/Use-on-Review [1] ("Use-on-Re-

---

1. The Concept Plan was approved by the MPC and this approval was not appealed. We,

view") resulting in the denial of the Use–on–Review. After a hearing, the Trial Court dismissed Plaintiffs' complaint. Plaintiffs appeal to this Court. We affirm.

### Background

Camdun purchased an option from Wadlyn on a 6.23 acre site in Knoxville, Tennessee ("the Property") for the purpose of developing 46 attached residential units. The Property was zoned RP–1, which, under the applicable zoning code, allows for a population density of up to twenty-four dwelling units per acre. Camdun submitted a Use–on–Review for the Property to the MPC. Lynn Redmon ("Redmon"), the president of the Norwood Homeowner's Association ("Norwood HOA") and several others submitted letters to the MPC seeking to have the MPC deny the Use–on–Review. Several persons, including Redmon, spoke to the MPC about the Use–on–Review during the MPC's December 14, 2006 meeting After hearing the speakers, the MPC voted to approve the Use–on–Review subject to certain conditions not at issue in this lawsuit.

Redmon appealed the MPC's decision to the City Council. As pertinent to this appeal, Article VII, Section 5 of the Knoxville Zoning Ordinance provides:

**Sec. 5. Procedure for authorizing uses permitted on review.**

The following procedure is established to provide for metropolitan planning commission reviews and recommendations on matters termed "use on review." These matters include:

A. *Development plans.*

1. In RP–1, RP–2, and RP–3 planned residential districts the planning commission shall review plans to determine the compatibility of the planned development with the surrounding area and to determine whether the objectives of the zone are met. The administrative procedure for this review shall be as described in article IV, section 4a, F[G], Administrative procedure for a planned residential development, of the zoning ordinance.

\*　　\*　　\*

B. *Uses permitted on review.* In addition to uses permitted by right in various districts, specified uses may be established and maintained only with the approval of the metropolitan planning commission. This review and approval process is intended: (1) to provide for uses which are beneficial to the community but that may involve a potential hazard to the development of an area unless appropriate provisions are made for their impacts; and (2) to integrate properly the uses permitted on review with other uses located in the district. These development plans and uses permitted on review shall be reviewed by the planning commission and approved, approved with conditions, or denied under the following procedure:

1. *Application.* An application shall be filed with the planning commission on forms provided for that purpose. Development plan submissions shall conform with the requirements of the zone in which their approval is sought. Applications for uses permitted on review shall show the location and intended use of the site and such other information as the planning commission deems necessary.

2. *Public hearing.* The planning commission shall hold a public hearing subsequent to notification consistent with its administrative rules and procedures.

3. *Restrictions.* In the exercise of its approval, the planning commission may impose such conditions regarding the lo-

therefore, discuss only the Use–on–Review in the remainder of this Opinion.

cation, character or other features of the proposed use or buildings as it may deem advisable in the furtherance of the general purposes of this ordinance.

4. *Approval or denial.* The planning commission may approve a development plan or use permitted on review where it can be shown that the proposed plan or use is in harmony with the general purpose and intent of the zoning ordinance and with the general plan and one-year plan and is reasonably necessary for the convenience and welfare of the community.

The planning commission may deny a development plan or use permitted on review where the above cannot be shown or where it can be shown that approval would have an adverse impact on the character of the neighborhood in which the site is located. Whereas a use may be appropriate in one location and inappropriate in another location in the same zoning district, the planning commission shall be guided by the policies of the general plan and by the one-year plan in the exercise of its administrative judgment about the location and appropriateness of uses permitted on review.

The rationale for planning commission approval, conditions or denial including substantive, factual statements of necessity and appropriateness or of adverse impact shall be included in the minutes of the planning commission meeting where decisions are made.

\* \* \*

8. *City council review of action of commission.*

a. Any person, firm or corporation aggrieved by any decision of the planning commission may petition the city council to consider the same in accordance with the provisions set forth in article VII, section 6, subsection F of this ordinance.

b. The city council shall include in the deliberation of any appealed matter statements regarding the possible impact of the request on the community.

Redmon filled out an Appeal of Decision form obtained from the MPC and listed the decision being appealed as "approval of 46 unit condo, development located at Murray Road & Wilkerson Road," his interest as "Norwood Homeowners Assoc.," and the reason for appeal as "development does not meet standards required for approval." The record before us contains a City Council Agenda Information Sheet which states, in pertinent part:

*AGENDA SUMMARY*

Appeal by Lynn Redmon for Norwood Homeowners Association of MPC approval of a development plan for up to 46 attached residential units on individual lots subject to 2 conditions, property located Southeast side of Murray Dr., northeast side of Wilkerson Rd., Camdun Realty I Applicant. (File No. 10–O–06–UR)

\* \* \*

*BACKGROUND*

The applicant is proposing to develop a project containing 46 attached dwellings on individual lots on this 6.23 acre site. The site was zoned RP–1 Planned Residential in 1973. Based on the fact that the site is shown for medium density residential use on the Knoxville One Year Plan, a plan for 6 to 24 units per acre could be submitted for review. The proposed development density of this project is 7.39 du/ac.

In 1995 MPC approved a development plan for this site that was similar to the current plan. MPC's approval was overturned by the Knoxville City Council. When the previous plan was considered by MPC and City Council area residents objected to the plan based on concerns regarding neighborhood compatibility and the condition of Murray Dr. Staff believes that since the site is located at

the intersection of two collector streets and it is located within approximately 1500' of Clinton Highway, the use of this site for medium density housing would be appropriate. As previously noted, the site is designated for medium density residential use on the Knoxville One Year Plan. This designation has been a part of that plan from its beginning in 1982. The applicant is proposing a development that will comply with the adopted plan.

The appellant's reason for appeal is that the development does not meet standards required for approval.

The City Council met and heard from people both for and against the Use–on–Review. Redmon submitted a map showing the proposed density of the Property and the densities of some of the surrounding developments and also spoke about concerns regarding drainage and traffic. After hearing from the speakers, the City Council members asked some questions and then voted to approve the appeal, thereby denying the Use–on–Review.

Wadlyn and Camdun then filed this action against the City and the City Council seeking, among other things, to have the Trial Court "declare the actions of the City council to be null and void for lack of statutory authority, or, alternatively, that its actions were arbitrary, capricious and in violation of their own ordinances and regulations." After a hearing, the Trial Court entered its Judgment on November 7, 2007 finding and holding, *inter alia:*

1. Based upon the Court's finding that T.C.A. § 13–7–201 et. seq. does not provide an exclusive and exhaustive, mandatory procedure for considering an appeal of municipal zoning issues such as the use-on-review upon which the instant litigation is predicated, the appeal to City Council authorized by Article VII, Section 6(F) of the Zoning Code of the City of Knoxville is not *ultra vires* and is not an invalid exercise of authority by City Council.

2. Based upon the fact that, in prosecuting this appeal, it was unchallenged that Lynn Redmon filed and pursued his appeal before City Council upon his own behalf and upon behalf of the Norwood Homeowners Association, and further considering the fact that Article VII, Section 6(F) of the Zoning Code grants the right of appeal to "any person, firm, or corporation agrieved, [sic]" the Court finds that Mr. Redmon had standing to pursue the appeal in question.

3. Considering the evidence in this case, the Court is of the opinion that the appeal pursued by Mr. Redmon was filed pursuant to the Metropolitan Planning Commission's rules for filing an appeal; that Mr. Redmon's interest in the matter was sufficiently stated; that it was clear to all the matter which was being challenged upon appeal; that, while no map may have been filed with the appeal, a map of the subject area was furnished to the City Council prior to their consideration of the appeal; and, that the City ordinance provided specifically that the appeal petition was to be filed "on forms available in the Planning Commission Office," the Court finds that, upon the facts of this case, the appeal as filed was adequate to bring the matter to City Council.

4. Upon a review of the record which was filed in this cause, the Court finds that there was sufficient evidence presented before City Council upon which City Council reasonably could have concluded that the proposed density of the development at issue was incompatible with surrounding or adjacent districts such that it would not be appropriate for the Court to substitute its judgment for that of City Council on this issue and the City Council's decision was not irrational, arbitrary, capricious, or unlawful.

5. For all of the foregoing reasons, the Court finds that the Plaintiff's Complaint for Damages and Petition for Declaratory Judgment and/or Writ of Certiorari is not well taken and it is, therefore, DISMISSED.

Wadlyn and Camdun appeal to this Court.

### *Discussion*

Wadlyn and Camdun raise four issues on appeal, which we quote:

I. Whether Article 7, Section 5(b)(8) and Article 7, Section 6(F) of the Knoxville Zoning Ordinance, which purportedly grants City Council authority to hear appeals of the Metropolitan Planning Commission from Use–on–Review approvals, is *ultra vires* and illegal as it is not authorized by Tenn. Code Ann. § 13–7–201 *et seq.*

II. Whether Lynn Redmon had standing pursuant to Article 7, Section 6(F) of the Knoxville Zoning Ordinance to file an appeal of the Metropolitan Planning Commission decision to City Council.

III. Whether the appeal pursued by Lynn Redmon complied with the Knoxville Zoning Ordinance.

IV. Whether City Council's decision to grant Lynn Redmon's appeal was illegal, arbitrary or capricious when the decision was not supported by material evidence.

We begin by noting that the City Council was acting in an administrative capacity exercising judicial or quasi-judicial powers in this case rather than in a legislative capacity. *See, e.g., McCallen v. City of Memphis,* 786 S.W.2d 633, 639 (Tenn.1990) (stating "a crucial test in distinguishing legislative from administrative acts is whether the action taken (resolution or ordinance) makes new law or executes one already in existence."). As our Supreme Court instructed in *McCallen:*

When the act of a local governmental body is legislative, judicial review is limited to "whether any rational basis exists for the legislative action and, if the issue is fairly debatable, it must be permitted to stand as valid legislation." *Keeton v. City of Gatlinburg,* 684 S.W.2d 97, 98 (Tenn.App.1984). In general, courts of all jurisdictions have interpreted the fairly debatable standard as requiring considerable deference to the decision of the governmental authority.

\*     \*     \*

The scope of judicial review under common law writ of certiorari, on substantive as opposed to procedural issues, is hardly distinguishable from the standard set out in *Fallin* [*v. Knox County Bd. of Com'rs,* 656 S.W.2d 338 (Tenn. 1983)]. The courts must determine whether the action of the city council in the exercise of its administrative, judicial or quasi-judicial function was illegal or in excess of jurisdiction. Tenn.Code Ann. § 27–8–101. If the exercise of authority by the governmental body can be classified as arbitrary or capricious, courts have routinely provided relief:

[An] abuse of discretion means action that is in opposition to the intent and policy of the statute and of the ordinance adopted conformably to its provisions, as applied to the facts and circumstances of the case.

McQuillin, § 25.310 at 562; *See* [*Hoover Motor Exp. Co. v. Railroad & Public Utilities Commission,* 195 Tenn. 593] 261 S.W.2d [233] at 238 [ (1953) ].

Abuse of discretion, arbitrariness, capriciousness, and unreasonableness are terms often used interchangeably. *Id.*

\*     \*     \*

The "fairly debatable, rational basis," as applied to legislative acts, and the "illegal, arbitrary and capricious" stan-

dard relative to administrative acts are essentially the same. In either instance, the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld. Both legislative and administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action.

If there was ever any basis for the distinction in the application of the substantive law to legislative and administrative actions, it has dissipated with the passage of time. Our consideration of the authorities on the subjects suggest little difference: ...

\* \* \*

The "fairly debatable rule" has in various jurisdictions been applied to both administrative and legislative actions. It is likewise apparent that the "illegal, arbitrary and capricious rule" has been applied in each instance.

While this court recognizes the statutory, procedural distinction between common law certiorari and declaratory judgment, there is no sound logic to maintain different standards of substantive review. Whether the action by the local governmental body is legislative or administrative in nature, the court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body. An invalidation of the action should take place only when the decision is clearly illegal, arbitrary, or capricious.

*Id.* at 640–42.

■ We now consider the first issue raised regarding whether Article VII, Section 5(b)(8) and Article VII, Section 6(F) of the Knoxville Zoning Ordinance, which purportedly grant the City Council author-

ity to hear appeals of the Metropolitan Planning Commission from Use–on–Review approvals, are *ultra vires* and illegal. Wadlyn and Camdun argue that this grant of authority is not authorized by Tenn. Code Ann. § 13–7–201 *et seq.*

Wadlyn and Camdun rely, in part, on *Browning–Ferris* in which this Court held that the enabling legislation did not allow "a county legislative body [to] retain unto itself the right of appellate review of an administrative act of the regional planning commission of the region over which the legislative body has jurisdiction. . . ." *State ex rel. Browning–Ferris Indus. of Tenn., Inc. v. Board of Commissioners of Knox County,* 806 S.W.2d 181, 193 (Tenn.Ct.App. 1990). However, *Browning–Ferris* is clearly distinguishable from the case at hand as *Browning–Ferris* dealt with a situation involving a county legislative body, not a municipal legislative body as is the situation in the case at hand. *Id.* The appropriate enabling statute in *Browning–Ferris* specifically stated that "[t]he legislative body of any county which enacts zoning regulations under the authority of this part *shall* create a county board of zoning appeals. . . ." Tenn.Code · Ann. § 13–7–106 (1999) (emphasis added). Thus, a county board of zoning appeals was mandated, not permissive as is the situation in the case at hand. Therefore, *Browning–Ferris* is not controlling.

The appropriate enabling statute relevant to the case now before us, Tenn.Code Ann. § 13–7–205, provides, in pertinent part, that the chief legislative body of a municipality may create a board of zoning appeals or may designate the planning commission as the board of zoning appeals and "may provide and specify, in its zoning or other ordinance, general rules to govern the organization and procedure and jurisdiction of the board of appeals. . . ." Tenn. Code Ann. § 13–7–205 (1999). The lan-

guage used in Tenn.Code Ann. § 13–7–205 clearly is permissive and not mandatory. The chief legislative body of a municipality may choose to create a board of zoning appeals, may designate the planning commission to act in that capacity, or may do neither. However, if a chief legislative body of a municipality chooses not to create a board of zoning appeals or designate the planning commission to act in such a capacity, this does not mean that there is no avenue of appeal to parties who have been aggrieved by actions of the planning commission. Further, we note that Tenn. Code Ann. § 13–7–201 *et seq.* contains no prohibition on the establishment of additional levels of administrative review beyond a board of zoning appeals, if the chief legislative body of a municipality desires to so provide. As such, the chief legislative body of a municipality could create a board of zoning appeals and then provide that appeals of matters from the board of zoning appeals would be heard by the chief legislative body.

The enabling statutes do not prohibit the chief legislative body of a municipality from retaining the right of review of actions of a planning commission such as in the case at hand. Therefore, we find and hold that the action of the City Council was not *ultra vires* and illegal.

■ We next consider whether Redmon had standing pursuant to Article VII, Section 6(F) of the Knoxville Zoning Ordinance to file an appeal of the Metropolitan Planning Commission decision to City Council. The Knoxville Zoning Ordinance Article VII, Section 6(F) provides, in pertinent part: "Any person, firm or corporation aggrieved by any decision of the metropolitan planning commission or the board of zoning appeals may petition the city council to consider the same. . . ." The City Council, as did the Trial Court, clearly found Redmon to be a person aggrieved when it heard his appeal. We cannot say

from the limited record before us that this was reversible error. Although we are given Redmon's address in the record on appeal, we are unable to tell from the record on appeal exactly where Redmon lives in relation to the Property. Nor are we able to tell the location of the Norwood HOA in relation to the Property. Given this, and in light of our limited standard of review, we find no error in the Trial Court's determination that Redmon had standing under Article VII, Section 6(F) of the Knoxville Zoning Ordinance to pursue this appeal.

■ We next turn to the issue of whether the appeal pursued by Redmon complied with the Knoxville Zoning Ordinance. With regard to this issue, the Trial Court found and held:

Considering the evidence in this case, the Court is of the opinion that the appeal pursued by Mr. Redmon was filed pursuant to the Metropolitan Planning Commission's rules for filing an appeal; that Mr. Redmon's interest in the matter was sufficiently stated; that it was clear to all the matter which was being challenged upon appeal; that, while no map may have been filed with the appeal, a map of the subject area was furnished to the City Council prior to their consideration of the appeal; and, that the City ordinance provided specifically that the appeal petition was to be filed "on forms available in the Planning Commission Office," the Court finds that, upon the facts of this case, the appeal as filed was adequate to bring the matter to City Council.

Wadlyn and Camdun correctly note that Redmon's appeal to the City Council was required by ordinance to contain certain information, such as the name of the owner of the subject property. However, we agree with the Trial Court that Redmon's appeal was filed pursuant to the MPC's rules for filing an appeal and that it suffi-

ciently complied with those rules. This is especially so given the fact that the City ordinance specifically provided that the appeal was to be filed on forms available in the Planning Commission Office, and Redmon obtained and filled out the forms given to him by the Planning Commission Office.

Finally, we consider whether the City Council's decision to grant Redmon's appeal was illegal, arbitrary or capricious. Wadlyn and Camdun argue that the City Council's decision was not supported by material evidence. We disagree. The record on appeal, scant as it is, reveals that the City Council had before it a map showing the proposed density of the Property and the densities of surrounding developments. This map constitutes material evidence that the proposed plan for the Property was not in harmony with the surrounding area or would have had "an adverse impact on the character of the neighborhood in which the site is located . . . ."

Under our limited standard of review, we must refrain from substituting our judgment for that of the local governmental body, in this case the City Council. As this Court stated in *State ex rel. Moore & Assocs., Inc.:*

> In fact, one principle that infuses the approach of Tennessee courts to judicial review of local land use decisions, whether those decisions are legislative or administrative in nature, is that "the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body."

*McCallen,* 786 S.W.2d at 641. There exists a public and judicial policy that favors permitting the community decision-makers closest to the events, who have been given broad powers in the area, to make zoning and land use decisions. Consequently, courts give wide latitude to local officials who are responsible for implementing zoning ordinances, are hesitant to interfere with zoning decisions, and will refrain from substituting their judgments for that of the local governmental officials. *Lafferty [v. Winchester]* 46 S.W.3d [752] at 758 [ (Tenn.Ct.App.2000) ]; *Hoover, Inc. [v. Metro. Bd. of Zoning Appeals],* 955 S.W.2d [52] at 54 [ (Tenn.Ct.App.1997) ]; *Whittemore v. Brentwood Planning Comm'n.,* 835 S.W.2d 11, 15 (Tenn.Ct. App.1992).

*State ex rel. Moore & Assocs., Inc. v. West,* 246 S.W.3d 569, 575 (Tenn.Ct.App.2005).

We find and hold that the action of the City Council was not clearly illegal, arbitrary, or capricious. We, therefore, affirm the judgment of the Trial Court on this issue as well.

### *Conclusion*

The judgment of the Trial Court is affirmed and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellants, The Wadlyn Corporation and Camdun Realty I, LLC, and their surety.