# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### November 16, 2010 Session

## DEPOT PROPERTY, LLC AND TERRY C. COX
### v.
## TOWN OF ARLINGTON, TENNESSEE

**Appeal from the Chancery Court for Shelby County**
**No. CH-09-2381-1     Walter L. Evans, Chancellor**

---

**No. W2010-01488-COA-R3-CV - Filed January 31, 2011**

---

This is a zoning case. The homeowner purchased a house in an area zoned as single-family residential and applied to have the property rezoned for office use. The application was considered by the town legislative body. Some members of the legislative body recused themselves. A majority of the members present voted in favor of the rezoning application, but it did not receive a majority of the entire membership of the legislative body, including the members who recused themselves. Pursuant to T.C.A. § 13-7-204, the rezoning application was deemed to have failed. The homeowner then filed a petition for a common law writ of certiorari, asking that the trial court deem the rezoning application approved based on the favorable vote of the majority of the members who participated in the consideration of his rezoning application. The trial court granted the writ, deemed the rezoning application approved, and modified the legislative body's decision to grant the homeowner's application. The town appeals. We reverse, finding, *inter alia*, that an affirmative vote by a majority of the entire membership of the town legislative body was required for adoption of the rezoning application.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HOLLY M. KIRBY, J.,, delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Terry C. Cox and F. Auston Wortman, III, Cox & Wortman, PLLC, Collierville, Tennessee, for Petitioner/Appellees, Depot Property, LLC and Terry C. Cox.

Edward J. McKenney, Jr., Harris Shelton Hanover Walsh, PLLC, Memphis, Tennessee, for Respondent/Appellant, Town of Arlington, Tennessee.

# OPINION

## FACTS AND PROCEEDINGS BELOW

On December 11, 2008, Petitioner/Appellee Terry Cox ("Cox") purchased a home in an older residential part of Arlington, Tennessee, located at 11965 Walker, in an area apparently known as Depot Square. Cox formed a limited liability company, Petitioner/Appellee Depot Property, LLC ("Depot Property"), to hold the property, and in January 2009, Cox conveyed the property to Depot Property. Cox is a member of Depot Property and, as a licensed attorney, represented Depot Property throughout the pertinent proceedings. Therefore, unless indicated otherwise, "Cox" as used herein shall be inclusive of both Terry Cox and Depot Property.

The property purchased by Cox is zoned single family residential. However, Cox wanted to use the property as a law office instead of a residence, so he filed an application with the Respondent/Appellant Town of Arlington ("Town") to have the property rezoned for office use. This rezoning would require an amendment to the Town's zoning ordinance.

Pursuant to state statutes and the Town's zoning ordinance, the Arlington Planning Commission ("Planning Commission") must do the initial review of all applications for amendments to the zoning ordinances. The Planning Commission then makes a recommendation to the Town's legislative body, the Board of Mayor and Aldermen ("Board"), regarding any such proposed amendment. The Planning Commission considered Cox's rezoning application during its January 2009 meeting. During the course of the discussion, the Planning Commission referred to the Land Development Plan of Arlington, Tennessee ("Plan").[1] The Plan addresses development and zoning for the Town, and states that it "is an advisory document intended to serve as a guide" for the Town. A map accompanying the Plan showing anticipated future land use indicates "commercial" use as an ultimate use of the area including Cox's property. The discussion at the Planning Commission meeting also referenced the provision in the Town's municipal ordinance listing the grounds required for granting an application to amend the zoning ordinance.[2]

---

[1]Tennessee Code Annotated § 13-4-201 requires municipal planning commissions "to make and adopt an official general plan" showing the commission's recommendations as to, among other things, zoning for private property. T.C.A § 13-4-201 (2005).

[2]In order to amend the zoning ordinance, both the Planning Commission and the Board are required to make specific findings that the zoning amendment is in agreement with the general plan for the area, the legal purposes for which zoning exists are not contravened, the zoning amendment will not have an adverse effect on adjoining property owners unless the adverse effects are outweighed by the overwhelming public good,
(continued...)

Numerous Town residents attended the Planning Commission meeting to address Cox's rezoning application. Cox spoke in favor of his application, commenting that he purchased the property partly in reliance on the indication of the future land use map attached to the Plan that the zoning in the area would ultimately be changed to commercial. Cox also recited his past experience in successfully renovating property. A few of the residents attending the meeting spoke in favor of Cox's application and commercial zoning for the overall area. Others asked questions about lighting and parking requirements for Cox's property if his zoning application were granted. Most of the residents attending the Commission's meeting spoke against Cox's application, expressing concerns such as a potential increase in traffic, change in the character and appeal of the area, future encroachment of commercial development, and a negative effect on the value of their property. Several speakers noted that Arlington had other available office space for Cox to use for his law office. At the conclusion of the meeting, the Planning Commission voted four to three to recommend that the Board deny Cox's application to rezone the property for office use. Cox's application was then forwarded to the Board, along with the Planning Commission's recommendation of denial.

In May 2009, while his rezoning application was pending, Cox filed a planned unit development application, seeking permission for a planned unit development for the same property. During its May 2009 meeting, the Planning Commission approved Cox's planned unit development application, but conditioned its approval on the Board's grant of Cox's application to change the zoning of the property to office use. The Planning Commission did not change its negative recommendation to the Board on the rezoning issue.

The Board has a total of seven members, namely, the Mayor and six Aldermen. Prior to the Board's consideration of his rezoning application, Cox requested that the Mayor and one Alderman recuse themselves from consideration of the application, on the grounds of either a conflict of interest or a predetermined position on the question of rezoning the property.[3] The Mayor and the Alderman agreed to do so.

The Board considered the rezoning of Cox's property for the first reading at its July 2009 meeting. In accordance with Cox's prior request, the Mayor and one Alderman recused

_____

[2](...continued)
and the zoning amendment will not benefit some property owners materially to the detriment of the public as a whole. Municipal Zoning Ordinance for Arlington, Tennessee, Article 13, § 13.5.

[3]Cox requested that one other Alderman recuse himself from the proceedings, but this request was later withdrawn.

themselves, and temporarily left the Board meeting. This left five Board members present to consider Cox's rezoning application. It passed on the first reading by a vote of four to one.

A public meeting for the second and final reading on the rezoning was set for August 3, 2009.

At the Board's August 2009 public meeting, the Mayor and the same Alderman again recused themselves and temporarily left the meeting. It was brought to the attention of the five remaining Board members that the Planning Commission recommended denial of Cox's original rezoning application, but approved his planned development application, contingent on the Board's approval of rezoning application. Ultimately, three Board members voted to approve the rezoning of the property, while two Board members voted against it. The Town Attorney, Gerald Lawson, advised the Board that under Tennessee statutes, specifically T.C.A. § 13-7-204, that if a proposed amendment to a zoning ordinance is not approved by the municipal planning commission, to be adopted, it must receive a favorable vote by a majority of the entire membership of the municipality's legislative body. Thus, to be adopted, Cox's rezoning application needed a favorable vote by four members of the seven-member Board, regardless of how many members recused themselves or were otherwise absent. As Cox's rezoning application had received only three votes, the Town Attorney advised that the rezoning application had failed. In the wake of this opinion, the Board referred the matter back to the Planning Commission.[4] Subsequently, Cox withdrew his application for a planned unit development, and asked the Planning Commission to reconsider his application to rezone the property.

At its September 2009 meeting, the Planning Commission reconsidered Cox's request to re-zone the property for office use. Cox again spoke on his own behalf. Numerous Town residents attended the meeting and spoke against Cox's rezoning application. They raised concerns about the change in the character of the area, the use of the property if Cox later sold it, and the effect on the resale value of their homes were rezoning carried out. Several noted that there were other available commercial locations in Arlington for Cox to use as his law office. The Planning Commission voted three to two to recommend that the Board deny Cox's application to rezone the property.

---

[4]During the September 2009 meeting of the Board, Cox submitted a request that the Board "ratify and affirm [the] conclusive effect" of the Board's August 2009 vote, thereby granting his application to rezone because a majority of the Board members actually voting voted in favor of changing the zoning of the property. The Board did not act on this request, based on advice by the Town Attorney that a motion to reconsider can only be made by an individual on the "prevailing side."

In October 2009, the Board again considered Cox's application to amend the zoning ordinance to allow office use for his property. The Mayor and five of the six Aldermen attended the Board meeting. Once again, the Mayor and one Alderman recused themselves and left the meeting; this left four Board members in attendance. The Board was informed that the Planning Commission recommended denial of Cox's zoning amendment. Cox spoke in favor of his proposal, and also told the Board that he disagreed with the Town Attorney's opinion that an affirmative vote by four of the seven Board members was required to amend the zoning ordinance. Numerous Town residents voiced their opposition to the rezoning proposal, expressing the same concerns that had been raised previously. The Town Attorney reiterated to the Board that a majority of the seven-member board, or four votes, was required to pass Cox's proposed amendment to the zoning ordinance. The motion to approve the rezoning failed for lack of a second.

After that, in December 2009, Cox filed a petition for common law certiorari against the Town in the trial court below.[5] The petition claimed that Cox had in fact received a "majority" vote of the Board in favor of the zoning amendment, and that the denial of his zoning application was contrary to the Plan, in which the property in question is "designated for commercial zoning." The petition sought to have the denial of his application by the Board and by the Planning Commission declared void, and requested the entry of an order rezoning the property for office use.

After Cox's petition was filed, the trial court issued the writ of certiorari as requested. The Town then filed the record of its proceedings on Cox's rezoning application.

On February 12, 2010 the Town filed its answer. In it, the Town noted that the Town's Plan was intended as a guide or an advisory document. The Town contended that under T.C.A. § 13-7-204, amending the rezoning ordinance requires an affirmative vote by a majority of the entire membership of the Board where, as here, the planning commission did not recommend the approval of the rezoning amendment. The Town also maintained that its decision on Cox's application was not illegal, arbitrary or capricious.

On April 6, 2010, the trial court conducted a hearing on the petition. The appellate record does not include a transcript of the hearing.

On May 13, 2010, the trial court issued findings of fact and conclusions of law. After reviewing the Town proceedings on Cox's application, as reflected in the record filed with the court, the trial court framed the issue:

---

[5]The petition also sought declaratory relief and damages. The parties later consented to the entry of an order dismissing these claims.

The basic question presented for resolution by the Court is whether the Board of Mayor and Aldermen was arbitrary, capricious and in violation of the City Charter, state statute and its own adopted land use plan in denying Petitioners' application for rezoning of the subject property.

The trial court's analysis set out the scope of the judicial review of the decision of a board or tribunal under T.C.A. § 29-9-10, limited to whether the agency, board or tribunal exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently. It noted that Cox had the burden of showing that the Board "exceeded its jurisdiction, acted illegally, arbitrarily, or without material evidence to support its decision."

In its conclusions of law, the trial court recited the state statutes,[6] Town charter provisions,[7]

---

[6]The trial court quoted the following statutes:

A.   Tennessee Code Annotated § 12-4-101(c)(3)(B), **Personal interest of officers prohibited**, states in pertinent part:

Any member of a local governing body of a municipality who <u>abstains</u> from voting for cause on any issue coming to a vote before the body <u>shall not be counted</u> for the purpose of determining a majority vote.

B.  Tennessee Code Annotated § 6-58-107, **Approved plan required – Land use decision to be consistent with plan**, states in pertinent part:

After a land use plan is so approved, **all** land use **decisions** made by the legislative body and municipality's . . . planning commission **shall be consistent with the land use plan**.

C.  Tennessee Code Annotated § 13-7-204 **Ordinances; amendment**

The zoning ordinance, including the maps, may from time to time be amended; but no amendment shall become effective unless it is first submitted to and approved by the planning commission or, if disapproved, receives the favorable vote of a **majority of the entire membership of the chief legislative body**.

(Emphasis in trial court findings of fact and conclusions of law.)

[7]The trial court recited a statement in the preface to the Town Charter to the effect that, in an action on adopting an ordinance, "[a]ny form of board action shall be passed by a majority of the members present, if there is a quorum." It also noted that Section 1-103 of the Town Charter stated that the transaction of business at the Board meetings would be governed by ROBERT'S RULES OF ORDER, *Newly Revised*. The trial court quoted the charter provision allowing any Board member to recuse himself from the vote on any measure in which it might appear that his personal interest could affect his vote.

and other authorities[8] that were pertinent.  The trial court found that the Board's decision to treat its 3-to-2 vote favoring Cox's rezoning application as insufficient to amend the Town's zoning ordinance was contrary to the provision in T.C.A. § 12-4-101(c)(3)(B), which states that a member of a municipal governing body who "abstains from voting" on an issue "shall not be counted for the purpose of determining a majority vote."  It also found that the denial of Cox's application to rezone the property contravened the provision in T.C.A. § 6-58-107 stating that "all land use decisions made by a legislative body and the municipality's . . . planning commission shall be consistent with the land use plan," and found unpersuasive the Town's argument that the Plan "was not a 'growth plan.' " It concluded that the Board acted unlawfully, arbitrarily and capriciously in denying Cox's rezoning application, and found that the Board's decision should be "reversed and modified so as to approve said application."

On May 28, 2010, the trial court entered an order, incorporating by reference its prior findings of fact and conclusions of law.  The order held:

> 1.  The three-to-two favorable vote of the Board of Mayor and Aldermen is recognized as approval of [Cox's] re-zoning application to use the subject property as a law office.
> 2.  The decision of the Board of Mayor and Aldermen denying [Cox's] re-zoning application to use the subject property as a law office be, and the same is hereby, modified so as to approve said application.

The Town now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Town raises three issues.  First, it asserts that the provisions of T.C.A. § 13-7-204 apply under the facts of this case and mandate that four members of the seven-member Board must vote in favor of Cox's application in order to amend the Town's zoning ordinance, and that the trial court erred in relying on Town charter provisions to the contrary.  Second, the Town contends that the trial court erred by finding that general statutes controlled over the mandatory provisions of T.C.A. § 13-7-204.  Finally, the Town asserts that the trial court erred in finding that the Board's decision was arbitrary and capricious.

---

[8]Because the Town charter stated that Board meetings would be governed by ROBERT'S RULES OF ORDER, the trial court quoted the following provision of ROBERT'S RULES: "When a quorum is present, a majority vote, that is a majority of the votes cast, ignoring blanks, is sufficient for the adoption of any motion that is in order."  ROBERT'S RULES OF ORDER, Rule 46, *Newly Revised* (2000).

This Court has previously addressed judicial review of a municipality's decision on zoning matters:

> Public and judicial policy favors permitting the community decision-makers closest to the events to make zoning and land use decisions, so courts must refrain from substituting their judgment for the broad discretionary power of local government bodies. *Wadlyn Corp. v. City of Knoxville*, 296 S.W.3d 536, 544 (Tenn. Ct. App. 2008); *Lafferty v. City of Winchester*, 46 S.W.3d 752, 758 (Tenn. Ct. App. 2000). "[C]ourts reviewing either zoning ordinances or the administrative decisions implementing zoning ordinances are inclined to give wide latitude to the responsible local officials. *Whittemore v. Brentwood Planning Comm'n*, 835 S.W.2d 11, 15 (Tenn. Ct. App. 1992).

*Lakeland Commons, L.P. v. Town of Lakeland*, No. W2009-01859-COA-R3-CV, 2010 WL 2075363, at *3 (Tenn. Ct. App. May 25, 2010).

The decision of a municipal legislative body on whether to approve an application to rezone property is administrative rather than legislative in nature when "the discretionary authority of the government body must be exercised within existing standards or guidelines." *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). *See also Lakeland Commons*, 2010 WL 2075363, at *3. Here, the decision of the Board on Cox's application was administrative, and thus was properly challenged by a petition for a writ of certiorari. *See McCallen*, 786 S.W.2d at 634. "The issuance of such a writ is not actually an adjudication of anything," rather, it " 'is simply an order to the lower tribunal to file the compete record of the proceedings so the trial court can determine whether the petitioner is entitled to relief.' " *Dobbins v. Tenn. Dept. of Correction*, No. M2010-00009-COA-R3-CV, 2010 WL 4225822, at *3 (Tenn. Ct. App. Oct. 25, 2010) (quoting *Keen v. TDOC*, 2008 WL 539059, at *2 (Tenn. Ct. App. Feb. 25, 2008)). "Once the writ is granted and the certified record is filed, then the trial court is charged with adjudicating the petition on the merits." *Dobbins*, 2010 WL 4225822, at *3.

In reviewing the decision of an administrative tribunal under a common law writ of certiorari, the appellate court utilizes the same standard of review used by the trial court. *Wright v. Tenn. Peace Officer Standards & Training Comm'n*, 277 S.W.3d 1, 8 (Tenn. Ct. App. 2008) (citations omitted). That standard has been stated as follows:

> "Review under the common law writ is limited to whether the inferior board or tribunal (1) has exceeded its jurisdiction, or (2) has acted illegally, arbitrarily, or fraudulently.' " *McCallen*, 786 S.W.2d at 638 (quoting *Hoover Motor Exp. Co. v. RR & Pub. Util. Comm'n*, 195 Tenn. 593, 261 S.W.2d 233,

238 (Tenn. 1953)). The court may not reweigh the evidence or scrutinize the intrinsic correctness of the decision. *Lafferty*, 46 S.W.3d at 759. Instead, "the court will review the record independently to determine whether it contains 'such relevant evidence that a reasonable mind might accept as adequate to support a rational conclusion.' " *Id*. (quoting *Hedgepath v. Norton,* 839 S.W.2d 416, 421 (Tenn. Ct. App. 1992)). The decision will be considered arbitrary only when there is no evidence in the record to support it. *Id*. (citing *Sexton v. Anderson County*, 587 S.W.2d 663, 667 (Tenn. Ct. App. 1979)).

"An action will be invalidated only if it constitutes an abuse of discretion. If "any possible reason" exists justifying the action, it will be upheld. Both legislative and administrative decisions are presumed to be valid and a heavy burden of proof rests upon the shoulders of the party who challenges the action." *McCallen,* 786 S.W.2d at 741

*Lakeland Commons*, 2010 WL 2075363, at *4.

Regardless, however, we review the trial court's conclusions of law *de novo* with no presumption of correctness. *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005). Statutory interpretation is a question of law. *Sullivan v. Edwards Oil Co.*, 141 S.W.3d 544, 547 (Tenn. 2004) (citing *Wallace v. State*, 121 S.W.3d 652, 656 (Tenn. 2003)).

## ANALYSIS

## T.C.A. § 13-7-204

The threshold issue in this appeal is whether Tennessee Code Annotated § 13-7-204 applies to the Board's vote on Cox's application to amend the Town's zoning ordinance so as to permit office use of his property.

"Local governments . . . have no power to control the use of land unless the State of Tennessee delegates the power to them." *Cherokee Club, Inc. v. City of Knoxville*, 152 S.W.3d 466, 471 (Tenn. 2004). "Accordingly, local governments must exercise their delegated powers consistently with the delegation statutes." *Family Golf of Nashville, Inc. v. Metropolitan Gov't of Nashville and Davidson County*, 964 S.W.2d 254, 257 (Tenn. Ct. App. 1997). Thus, the Town's action on Cox's application to amend the Zoning Ordinance must be considered in light of the Tennessee statutes that govern zoning.

In analyzing the Board's decisions, the trial court relied in part on provisions of the Town's charter that define what constitutes a "majority vote" for purposes of the Board's action on Cox's rezoning application. To the extent that the Town charter conflicts with state statutes, the charter must, of course, yield to the law of the State. ***Waldorf v. City of Chattanooga***, 237 S.W.2d 939, 941 (Tenn. 1951).

The trial court also relied on Tennessee Code Annotated § 6-2-102, part of the overall Title on Cities and Towns, in the Chapter on the powers of municipalities with a mayor-alderman charter. The statute addresses the procedure for the enactment of an ordinance, and states: "Any form of board action shall be passed by *a majority of the members present*." T.C.A. § 6-2-102 (2005) (emphasis added). As the action on Cox's rezoning application amounts to an amendment of the Town's zoning ordinance, the trial court concluded that, under this statute, the 3-to-2 vote of the Board in favor of Cox's application was sufficient.

The trial court also relied on Tennessee Code Annotated § 12-4-101(c)(3)(B), part of Title 12 on Public Property, Printing and Contracts, the Chapter on Public contracts. Section 12-4-101 is entitled "Personal interest of officers prohibited," and contains general provisions on the actions of public officials with respect to the contracts of a municipality or other political subdivision. Subsection (c)(3)(B) of the statute states that a member of a municipal governing body who abstains from voting on an issue "shall not be counted for the purpose of determining a majority vote." T.C.A. § 12-4-101(c)(3)(B). Because two voting members of the Board, the Mayor and one Alderman, abstained from voting on Cox's application, the trial court also found this statute supported Cox's argument that the Board's 3-to-2 vote in favor of his application was sufficient.

The trial court recited Tennessee Code Annotated § 13-7-204 in its findings of fact and conclusions of law, but implicitly concluded that it was not applicable. We must respectfully disagree.

Section 13-7-204 is contained in Title 13 on Public Planning and Housing, in the Chapter on Zoning. This Court has observed that the statutes in this Chapter address both zoning and planning by municipalities:

> The state enabling legislation places the authority to plan and the authority to zone with different local governmental entities. Planning is entrusted to appointed municipal or regional planning commissions. ***See*** T.C.A. §§ 13-3-101, 13-4-101 (1992 & Supp. 1996). In contrast, the zoning power is squarely placed in the hands of the local legislative bodies because the power to zone is viewed as essentially a legislative exercise of the government's police power. ***See Holdredge v. City of Cleveland***, 218 Tenn. 239, 247-48, 402 S.W.2d 709, 712 (1966); ***Brooks v. City of Memphis***, 192 Tenn. 371, 375, 241

-10-

S.W.2d 432, 434 (1951). Local legislative bodies may enact zoning plans recommended by planning commissions, but they are not obligated to. *See* T.C.A. § § 13-7-102, 13-7-202. Local legislative bodies may also amend zoning ordinances; however, they must submit proposed changes to the planning commission for review. If the planning commission disapproves of a proposed change, a majority of the "entire membership" of the local legislative body must approve the proposed change in order for it to be valid. *See* T.C.A. §§13-7-105(a), 13-7-203(b), 13-7-204. Accordingly, the state enabling legislation vests the local legislative bodies with the prerogative to make financial decisions on all zoning matters. *See State ex rel. SCA Chem. Servs., Inc. v. Sanidas*, 681 S.W.2d at 564; E.C. Yokley, *The Place of the Planning Commission and the Board of Zoning Appeals in Community Life,* 8 Vand. L.Rev. 794, 795 (1955).

*Family Golf of Nashville, Inc. v. The Metropolitan Government of Nashville and Davidson County*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997). Thus, the statutes note the different roles of the municipal planning commission and the municipal legislative body in the zoning process. *Id.* at 257-58.

Section 13-7-204, in particular, alludes to the function of a municipality's planning commission and the municipality's legislative body with respect to the amendment of the municipal zoning ordinance. It states:

> The zoning ordinance, including maps, may from time to time be amended; but no amendment shall become effective unless it is first submitted to and approved by the planning commission or, if disapproved receives the favorable vote of a majority of the entire membership of the chief legislative body.

T.C.A. § 13-7-204 (2005). Thus, it provides that an amendment to the zoning ordinance must first be presented to the planning commission. This requirement has been found to be mandatory. *See Holdredge v. City of Cleveland*, 402 S.W.2d 709, 712 (Tenn. 1966). Reflecting the "division of power" intended in the statutory scheme, the statute also provides that if the planning commission disapproves of a proposed amendment to the municipality's zoning ordinance, adoption of the amendment by the legislative body requires a "super-majority" of sorts, *i.e.*, the amendment "shall not become effective unless it . . . receives the favorable vote of a majority of the entire membership of the chief legislative body." *See Family Golf*, 964 S.W.2d at 258 (stating that a similar provision in the metro charter "mirrored" the "division of power evident in the state enabling legislation"). This requirement is echoed elsewhere in the zoning statutes. *See* T.C.A. § 13-7-105(a) (similar provision for a county legislative body's amendment to a zoning ordinance, if the regional

planning commission disapproves the amendment); *see also* T.C.A. § 13-7-203(b) (similar provision for change or departure from the planning commission's certified text or maps if disapproved by the planning commission).

Assuming, without deciding, that Sections 6-2-102 and 12-4-101 would otherwise apply to the Board's action on Cox's rezoning application, we find that Section 13-7-204 controls. It is well-settled that, in the event of conflicting statutes, "a more specific statutory provision takes precedence over a more general provision." *Graham v. Caples*, No. W2009-00200-SC-S09-CV, 2010 WL 418222 at \*3 (Tenn. Oct. 20, 2010) (citing *Arnwine v. Union Cnty. Bd. of Educ.* 120 S.W.3d 804, 809 (Tenn. 2003). Indeed, "where the mind of the legislature has been turned to the details of a subject and they have acted upon it, a statute treating the subject in a general manner should not be considered as intended to affect the particular provision." *Arnwine*, 120 S.W.3d at 809.

Section 13-7-204 is clearly intended to address precisely the situation presented herein. At the time Cox's proposed amendment to the Town zoning ordinance was presented to the Board, it had already been "disapproved" by the Planning Commission. Under these circumstances, Section 13-7-204 addresses the vote required for enactment of Cox's proposed rezoning amendment.

In interpreting this statute, this Court must "ascertain and give effect to the legislature's intent." *Home Builders Ass'n of Middle Tenn. v. Williamson Cty.*, 304 S.W.3d 812, 817 (Tenn. 2010). We must "give effect to every word phrase, clause and sentence" of the statute. *Tidwell v. Collins*, 522 S.W.2d 764, 777 (Tenn. 1975). Where, as here, "the language contained within the four corners of a statute is plain, clear, and unambiguous. . . 'the duty of the courts is simple and obvious, namely, to say *sic lex scripta* and obey it.' " *Carson Creek Vacation Resorts, Inc. v. State of Tenn. Dept. of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993) (quoting *Miller v. Childress*, 21 Tenn. (2 Hum.) 319, 321-22 (1841)).

In this case, the statutory language is clear and unambiguous. Under Section 13-7-204, a favorable vote from the majority of the entire seven-member Board was required to enact Cox's proposed amendment to the Town zoning ordinance. Cox's application received only three favorable votes. Therefore, the Board correctly determined that the proposed amendment had failed. Accordingly, we must respectfully reverse the trial court's decision to the contrary.

### Unlawful, Arbitrary and Capricious

The trial court also held that, in the event that the 3-to-2 vote by the Board was deemed a denial of Cox's proposed rezoning amendment, the Board's action was unlawful, arbitrary and capricious because it did not comport with the indication in the map attached to the Plan

that the area in which Cox's property is located would at some point be zoned commercial. This holding was based on Tennessee Code Annotated § 6-58-107, which provides for the adoption of a "growth plan" for each county. Once such a "growth plan" is approved, the statute states, "all land use decisions made by the legislative body and the municipality's . . . planning commission shall be consistent with the growth plan." T.C.A. § 6-58-107 (2005).

Assuming, without deciding, that the map attached to the Town's "Land Use Plan" is a "growth plan" within the meaning of this statute,[9] we must find that the Board's action was not "inconsistent" with the growth plan. The map indicates only that, at some undetermined point in the future, the area in which Cox's property is located may be zoned "commercial." The "plan" does not state when such a change in zoning would occur. Indeed, a portion of the public discourse at the meeting on Cox's rezoning application indicated that, while the area in which Cox's property is located may at some point be zoned commercial, it was premature to do so at this point, because the surrounding neighborhood remains appealing to families currently residing there and also to potential residents looking for a unique residential neighborhood. Thus, we find that the Board's decision is not "inconsistent" with the alleged growth plan within the meaning of Section 6-58-107.

Apart from any perceived inconsistency with the map attached to the Town's Plan, the record contains ample basis for the Board's denial of Cox's rezoning application. Numerous nearby residents voiced concerns to the Board about whether permitting Cox's property to be rezoned would bring about undesirable changes in the character of the area, would have a negative effect on the value of the neighbors' homes, and other such matters. The Town's zoning ordinance states that, in order for an amendment to the ordinance to be adopted, it must not "have an adverse impact on adjoining property owners unless the adverse effects are outweighed by the overwhelming public good," and also that the amendment must "not benefit some property owners materially to the detriment of the public as a whole." ARLINGTON ZONING ORDINANCE § 13.5. The record contains ample support for the Board's apparent conclusion that the requirements to amend the Town's zoning ordinance were not met. Under all of these circumstances, we must respectfully disagree with the trial court's conclusion that the Board's decision was unlawful, arbitrary or capricious.

---

[9]Under T.C.A. § 6-58-107, "the growth plan shall include, at a minimum, documents describing and depicting municipal corporate limits, as well as urban growth boundaries, planned growth areas, if any, and rural areas, if any. . . ." T.C.A. § 6-58-107 (2005).

**CONCLUSION**

The decision of the trial court is reversed. Costs on appeal are taxed to the Appellees Terry C. Cox and Depot Property, LLC, for which execution may issue, if necessary.

_____

HOLLY M. KIRBY, JUDGE