# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

FILED

October 10, 1997

Cecil W. Crowson
Appellate Court Clerk

FAMILY GOLF OF NASHVILLE, INC.,  )
                                  )
        Plaintiff/Appellant,      )
                                  )  Davidson Chancery
                                  )  No. 95-3832-I
                                  )
VS.                               )
                                  )  Appeal No.
                                  )  01A01-9612-CH-00557
                                  )
THE METROPOLITAN GOVERNMENT       )
OF NASHVILLE AND DAVIDSON         )
COUNTY,                           )
                                  )
        Defendant/Appellee.       )


APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR


For the Plaintiff/Appellant:              For the Defendant/Appellee:

Peter H. Curry                            Thomas G. Cross
Tuke, Yopp & Sweeney                      Metropolitan Attorney
Nashville, Tennessee                      Nashville, Tennessee


## VACATED AND REMANDED


WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This case involves the validity of an amendment to the Zoning Ordinance for Metropolitan Government of Nashville and Davidson County intended to permit a family recreation center to construct a go-cart track. After the Metropolitan Planning Commission refused to amend the zoning map in accordance with the amendment, the operator of the recreation center filed a declaratory judgment action in the Chancery Court for Davidson County. Following a bench trial, the trial court struck down the ordinance because it conflicted with the General Plan for Nashville and Davidson County. The operator has appealed. We have determined that the amendment is valid as long as it was passed in accordance with the super-majority requirements of the Metropolitan Charter and, accordingly, remand the case for a definitive factual determination of that issue.

## I.

Family Golf of Nashville, Inc. operates an outdoor family recreation center on a leased 4.32 acre tract at the intersection of Bell Road and Blue Hole Road. The property lies near the Hickory Hollow Commercial Center and is located in the floodplain. Family Golf has already constructed a miniature golf course, a driving range, and a batting cage on the property. The present dispute arises out of its desire to construct a go-cart track and an arcade.

The property is presently zoned AR2a which permits a variety of agricultural and low-density residential uses.[1] Acting on the advice of representatives of the Metropolitan Planning Commission that go-cart tracks were not permitted in AR2a

---

[1]Metropolitan Gov't of Nashville and Davidson County, Tennessee, Code § 17.20.020 (1994) ("Metro Code") describes the purposes of AR2a districts as follows:

> These districts are designed to provide suitable areas for the growing of crops, animal husbandry, dairying, forestry and other similar activities which generally occur and characterize rural rather than urban areas. These districts are designed, furthermore, to provide for very low-density residential development generally on unsubdivided tracts of land whereon public sanitary sewer service and public water supply is least practical. These districts also include community facilities, public utilities, and open uses which serve specifically the residents of these districts or which are benefitted by an open residential environment without creating objectionable or undesirable influences upon residential developments or influences which are incompatible with a rural environment. Further, it is the intent of this title that these districts be located and developed so that urban expansion of the metropolitan area will be facilitated.

zones, Family Golf requested the Metropolitan Council to rezone the property to place it in a CS zone.[2] The record does not contain a precise explanation concerning why this rezoning was necessary. The existing uses of the property, including the miniature golf course, the driving range, and the batting cage are permissible as conditional uses in an AR2a district because they are "extensive impact" community facilities.[3] An extensive impact facility conducts activities such as "boating, picnic grounds and racing facilities seating over twenty-five thousand, but not . . . other motor-driven activities." Metro. Code § 17.12.070(E)(13) (1997). Presumably, a large motor speedway catering to professional racing is permitted as a conditional use in an AR2a district but a go-cart track is not. *See* Metro. Code §§ 17.12.080(18) (1997), 17.60.020(C)(18) (1996).

Interestingly, the planning commission opposed Family Golf's proposed ordinance even though it had earlier recommended that Family Golf rezone the property to a CS district. The planning commission took the position that rezoning this property to a CS district would violate the land use policies in Nashville's current general plan entitled *Concept 2010 - A General Plan for Nashville and Davidson County (1992).* Specifically, the planning commission pointed out that its plan for the area called for (1) medium density land use policy, (2) confinement of commercial activities to commercial centers, and (3) protection of floodplains by favoring zoning that permitted low impact uses. Even though the proposed go-cart track arguably complies with these criteria, other commercial uses permitted in CS districts, such as dry cleaning businesses, service stations, and auto repair shops, do

---

[2] Metro. Code § 17.56.080 describes the purposes of CS, commercial service, districts as follows:

> These districts are designed to provide for a wide range of commercial uses concerned with retail trade and consumer services; amusement and entertainment establishments; drive-in stores, eating places and financial institutions; and offices. The uses in these districts service a wide market area and, therefore, ease of automotive access is a requisite. However, it is not intended that these districts permit uses which generate large volumes of truck traffic. Bulk regulations are designed to control building volumes such that compatibility with vicinity residential uses is promoted, while maintaining maximum flexibility in commercial activities. Appropriate open space between commercial and residential areas is required unless appropriate design features are accomplished under the planned unit development procedures for this district.

[3] Metro. Code § 17.24.030(A)(16) (1994).

not.[4] While technically correct, the planning commission's concern seems to be somewhat overly cautious.[5]

The Metropolitan Council eventually adopted Ordinance No. 94-1222 that rezoned the property to a CS district. Notwithstanding the Council's action, the planning commission refused to amend the official zoning map to reflect the zoning change in the ordinance. The planning commission justified its conduct by pointing to an opinion of the Metropolitan Department of Law that a zoning ordinance in conflict with Nashville's general plan was invalid.[6] As a result, Family Golf could not obtain a building permit to construct its go-cart track.

Family Golf filed suit in the Chancery Court for Davidson County seeking a declaration that Ordinance No. 93-1222 was valid notwithstanding the planning commission's assertion that the ordinance was inconsistent with Nashville's general plan. The trial court found that the ordinance was inconsistent with the general plan and declared it invalid. The trial court rested its decision on Metro. Charter § 18.02 which states, in part, that "[z]oning regulations shall be enacted by the council only on the basis of a comprehensive plan prepared by the metropolitan planning

---

[4]*See* Metro. Code §§ 17.12.080(10) (1997), 17.60.020(16) (1996) (dry cleaning businesses); Metro. Code §§ 17.12.080(11) (1997), 17.60.020(C)(3) (1996) (gas stations); Metro. Code §§ 17.12.080(4) (1997), 17.60.020(C)(19) (1996) (auto repair shops).

[5]Because the property is located in a floodplain, Family Golf must obtain a conditional use permit from the Metropolitan Board of Zoning Appeals for any use of the property other than "[c]rop and animal raising" or a "[p]lant nursery." Metro. Code §§ 17.116.020, 17.116.030 (1992). In addition, all structures constructed in a floodplain are subject to stringent requirements such as (1) minimal floor elevations that are equal to or higher than the "flood protection elevation," Metro. Code § 17.124.360(B), (C) (1992); (2) placement on the site so as "to minimize obstruction to the flow of floodwaters," Metro. Code § 17.124.360(D); (3) being firmly anchored to prevent flotation and movement, Metro. Code § 17.124.360(E); and (4) the prior approval of the project by the board of zoning appeals and the Director of Public Works, Metro. Code § 17.124.360(A), (F). It seems likely that most structures would have to be built on stilts to satisfy these requirements. Even presuming that the owner of a dry cleaning business, gas station, or auto repair shop could comply with these ordinances, the expense of doing so would, as a practical matter, make the project uneconomic.

[6]The Metropolitan Department of Law must provide legal advice to and represent the Metropolitan Government, including the Metropolitan Council and the planning commission. Charter of the Metropolitan Gov't of Nashville and Davidson County, Tennessee § 8.602(a)-(c) ("Metro. Charter"). In the present case, the Department of Law is representing the planning commission but not the Metropolitan Council. The Council has not retained independent counsel even though it could do so. Metro. Charter § 8.607. Thus, the Council is unrepresented in this proceeding even though the legality of one of its ordinances is at issue.

commission."[7]  This appeal by Family Golf requires us to examine the manner in which the Charter of the Metropolitan Government of Nashville and Davidson County has allocated land use control authority between the Metropolitan Council and the planning commission.

## II.

### LAND USE CONTROL IN NASHVILLE AND DAVIDSON COUNTY

Local governments lack inherent power to control the use of land within their boundaries.  This power rests with the State; however, the General Assembly may delegate it to local governments.  *See Henry v. White*, 194 Tenn. 192, 196, 250 S.W.2d 70, 71 (1952); *Anderson County v. Remote Landfill Servs., Inc.,* 833 S.W.2d 903, 909 (Tenn. Ct. App. 1991); *State ex rel. Browning-Ferris Indus. of Tenn., Inc. v. Board of Comm'rs*, 806 S.W.2d 181, 184 (Tenn. Ct. App. 1990); *State ex rel. SCA Chem. Servs., Inc. v. Sanidas*, 681 S.W.2d 557, 562 (Tenn. Ct. App. 1984).  Accordingly, local governments must exercise their delegated powers consistently with the delegation statutes.  *Henry v. White*, 194 Tenn. at 197, 250 S.W.2d at 72.

---

[7]Metro. Charter § 18.02 reads in full as follows:

> Zoning regulations shall be enacted by the council only on the basis of a comprehensive plan prepared by the metropolitan planning commission in accordance with the applicable state laws and as provided in section 3.05 of this Charter.
>
> Any revision, modification or change in the zoning regulations of the metropolitan government as provided in this section shall be made only by ordinance.  Where a proposed ordinance revises, modifies, or changes the zoning regulations and is not accompanied at introduction by a favorable recommendation of the metropolitan planning commission, a copy thereof shall be promptly furnished by the metropolitan clerk to said planning commission, and the same shall not be passed on second reading until the recommendation of said planning commission with respect to the proposal has been received or thirty (30) days have elapsed without such recommendation.  No ordinance making any revision, modification or change in the zoning regulations which has been disapproved by the metropolitan planning commission shall be finally passed or become effective unless it shall be adopted by a two-thirds majority of the whole membership of the council and also then be approved by the metropolitan mayor, with a three-fourths majority of the whole membership of the council required to override a veto.

The General Assembly has empowered county and municipal legislative bodies to zone property. *See* Tenn. Code Ann. §§ 13-7-101 to 13-7-210 (1992 & Supp. 1996). At the same time, it has delegated the land use planning function to local and regional planning commissions. *See* Tenn. Code Ann. §§ 13-3-101 to 13-4-309 (1992 & Supp. 1996). The power to zone must be distinguished from the power to plan.

Zoning and planning are complementary pursuits that are largely concerned with the same subject matter. They are not, however, identical fields of municipal endeavor. *See* 1 E. C. Yokley, *Zoning Law and Practice* §§ 1-2, at 2 (4th ed. 1978) ("Yokley"). Planning involves coordinating the orderly development of all interrelated aspects of a community's physical environment as well as all the community's closely associated social and economic activities. *See* 1 Norman Williams, Jr. & John M. Taylor, *American Land Planning Law* § 1.05, at 13 (rev. ed. 1988) ("American Land Planning Law"); Robert W. Phair, *Planning and Zoning: Principles and Practice*, 29 Tenn. L. Rev. 514, 514 (1962). It is a continuous process carried out indefinitely through time. Common sense and reality dictate that a general plan "is not like the law of the Medes and the Persians; it must be subject to reasonable change from time to time" as conditions in the community change. *Furniss v. Lower Merion,* 194 A.2d 926, 927 (Pa. 1963).

Zoning, on the other hand, involves the territorial division of land into districts according to the character of the land and buildings, their suitability for particular uses, and the uniformity of these uses. *See* 1 Kenneth H. Young, *Anderson's American Law of Zoning* § 1.13, at 19 (4th ed. 1996) ("Young") (citing *Schultz v. Pritts*, 432 A.2d 1319, 1330 (Md. 1981)). Zoning ordinances are now the most important and prevalent type of American land use control. *See* American Land Planning Law § 16.01, at 434. These ordinances focus primarily on the use of property and the structural and architectural designs of the buildings. *See In re Sundance Mountain Ranches, Inc.,* 754 P.2d 1211, 1213 (N.M. Ct. App. 1988); *Kaufman v. Planning & Zoning Comm'n,* 298 S.E.2d 148, 153 (W.Va. 1982); Yokley §§ 1-2, at 14-15.

The state enabling legislation places the authority to plan and the authority to zone with different local governmental entities. Planning is entrusted to appointed municipal or regional planning commissions. *See* Tenn. Code Ann. §§ 13-3-101, 13-4-101 (1992 & Supp. 1996). In contrast, the zoning power is squarely placed in the hands of the local legislative bodies because the power to zone is viewed as essentially a legislative exercise of the government's police power. *See Holdredge v. City of Cleveland,* 218 Tenn. 239, 247-48, 402 S.W.2d 709, 712 (1966); *Brooks v. City of Memphis,* 192 Tenn. 371, 375, 241 S.W.2d 432, 434 (1951). Local legislative bodies may enact zoning plans recommended by planning commissions, but they are not obligated to. *See* Tenn. Code Ann. §§ 13-7-102, 13-7-202. Local legislative bodies may also amend zoning ordinances; however, they must submit proposed changes to the planning commission for review. If the planning commission disapproves of a proposed change, a majority of the "entire membership" of the local legislative body must approve the proposed change in order for it to be valid. *See* Tenn. Code Ann. §§ 13-7-105(a), 13-7-203(b), 13-7-204. Accordingly, the state enabling legislation vests the local legislative bodies with the prerogative to make final decisions on all zoning matters. *See State ex rel. SCA Chem. Servs., Inc. v. Sanidas*, 681 S.W.2d at 564; E.C. Yokley, *The Place of the Planning Commission and the Board of Zoning Appeals in Community Life,* 8 Vand. L. Rev. 794, 795 (1955).

Local governments may decide for themselves how best to exercise the land use control powers delegated by the General Assembly as long as their decisions do not conflict with state law. In the case of the Metropolitan Government of Nashville and Davidson County, the Charter Commission allocated portions of these powers to the Metropolitan Council and to the Metropolitan Planning Commission. Consistent with state law, the Metropolitan Council received the power to control land use in the city. *See* Metro. Charter §§ 2.01(25), 3.06. The Metropolitan Planning Commission was vested with the powers "granted . . . by general state law." Metro. Charter § 11.504. By allocating the powers in this way, the Charter Commission stated clearly that the Metropolitan Council has the final say over zoning matters.

The division of power evident in the state enabling legislation is mirrored in Metro. Charter § 18.02 – the very section on which the Metropolitan Planning Commission relies in this case. This provision states that a proposed zoning change that has been disapproved by the planning commission can become effective only if adopted by a two-thirds majority of the "whole membership of the council." If the mayor vetoes the ordinance containing the proposed zoning change, then it cannot become effective unless a three-fourths majority of the "whole membership" of the Metropolitan Council overrides the veto. The primary difference between the state enabling legislation and Metro. Charter § 18.02 is the charter's requirement that changes in zoning ordinances that are either disapproved by the planning commission or vetoed by the mayor can become effective only with the vote of a super-majority of the entire membership of the Metropolitan Council.

The Metropolitan Planning Commission's interpretation of Metro. Charter § 18.02 rests on its perception that there should be a distinction between proposed zoning changes that violate the general plan and proposed zoning regulations that it has disapproved. The former, the commission contends, are invalid under all circumstances; while the latter may be overridden by a super-majority of the Metropolitan Council. This distinction is extremely subtle, especially in light of the unprecedented shift of power it would accomplish. It is also not supported by the Metropolitan Charter.

Metro. Charter § 11.505 states, in part, that

> [w]henever the commission shall have adopted the master or general plan . . . thenceforth no street, park or other public way . . . [or] no public building or structure . . . shall be constructed or authorized . . . unless . . . approved by the planning commission; provided, that in case of disapproval . . . said council by a vote of a majority of its membership, shall have the power to overrule such disapproval.

This section refers to the "general plan" and the planning commission's "disapproval" in the same sentence without distinguishing the terms. There is good reason for this. The planning commission may amend the general plan by resolution at any time. *See* Tenn. Code Ann. § 13-4-201; Metro. Charter § 11.504(e). Therefore, the planning commission's approval or disapproval of any proposed

zoning ordinance is, in that sense, synonymous with the general plan. Accordingly, the Metropolitan Charter does not distinguish between zoning ordinances that are contrary to the general plan and ones that have been disapproved by the planning commission. Either may be validly passed by a super- majority of the Metropolitan Council.

Had the Charter Commission intended to give the appointed Metropolitan Planning Commission veto authority over the Metropolitan Council's zoning power, it would have done so more clearly. We do not read Metro. Charter § 18.02 as some sort of surreptitious departure from the state law. Instead, we view Section 18.02 as clear confirmation of the important advisory role the Metropolitan Planning Commission plays in the control of the use of land in Nashville. By requiring a super-majority of the Metropolitan Council to override the planning commission's disapproval of a proposed zoning change, the Charter Commission intended to protect against random or ad hoc zoning and to ensure that the Metropolitan Council takes the carefully crafted general plan seriously.

In summary, any zoning ordinance that conflicts with the general plan or that has been disapproved by the Metropolitan Planning Commission is nevertheless valid if it was enacted in accordance with the super-majority requirements of Metro. Charter § 18.02. This charter provision does not change the balance of power between the Metropolitan Council and the Metropolitan Planning Commission.[8]

## III.

### THE ENACTMENT OF ORDINANCE NO. 94-1222

We must also determine whether the enactment of Ordinance No. 94-1222 complies with the super-majority requirements of Metro. Charter § 18.02. In the absence of a mayoral veto, this provision requires a zoning ordinance to be passed by a two-thirds vote of the "whole membership" of the council. Since the Metropolitan Council consists of forty members,[9] twenty-seven members or more must vote in

---

[8]We note parenthetically that our interpretation of Metro. Charter § 18.02 is consistent with the conclusions of other courts that have been confronted with similar issues. *See* Young § 5.06, at 369-73.

[9]*See* Metro. Charter § 3.01.

favor of the ordinance in order for it to be valid. If the mayor vetoes[10] the ordinance, three-fourths of the "whole membership" of the council, thirty or more members, must vote to override the veto.

The appellate record does not reveal the number of council members who voted in favor of Ordinance No. 94-1222. Nor does it reveal when the ordinance was delivered to the mayor for consideration or what disposition the mayor made of the ordinance. Since the Metropolitan Council enacted the ordinance over the planning commission's objection, it seems probable that at least twenty-seven council members voted in its favor. Nevertheless, the record does not reveal the vote, and if less than twenty-seven council members voted for the ordinance, it is invalid.

By the same token, we can only speculate concerning when the mayor received the ordinance and what he did with it after he received it. If he signed the ordinance and returned it or held it for more than the time provided in Metro. Charter § 5.04, then the ordinance is valid. If, however, he vetoed or disapproved the ordinance in the manner provided in Metro. Charter § 5.04, then the ordinance is valid only if the Metropolitan Council overrode the mayor's disapproval by a vote of three-fourths of its entire membership. There is no evidence in the record of the mayor's action or whether the Metropolitan Council took another vote on Ordinance No. 94-1222.

## IV.

### THE CONSTITUTIONALITY OF ORDINANCE NO. 94-1222

The Metropolitan Planning Commission finally asserts that Ordinance No. 94-1222 is unconstitutional because it lacks any rational or justifiable basis. It argues that the ordinance amounts to spot zoning because the Metropolitan Council singled out Family Golf's property for rezoning and thus conferred on Family Golf a benefit denied to similarly situated property owners. Thus, the commission contends that the

---

[10]Under Metro. Charter § 5.04, the mayor may veto or "disapprove" an ordinance by returning it unsigned to the council at or prior to the next regular council meeting occurring ten days or more subsequent to the date that the ordinance was delivered to the mayor for consideration. The mayor may, but is not required to, attach a message explaining the reasons for his or her disapproval. If the mayor does not return the ordinance within the prescribed time, it automatically becomes effective.

ordinance does not legitimately advance the health, safety, morals, or welfare of the Nashville community. We disagree.

Local legislative bodies have broad discretion in enacting or amending zoning ordinances. When the validity of a zoning ordinance is fairly debatable, the courts may not substitute their judgment for that of the local legislative body. A zoning ordinance should be found valid unless it is "clearly arbitrary, capricious, or unreasonable, having no substantial relationship to the public health, safety, or welfare, or plainly contrary to the zoning laws." *McCallen v. City of Memphis,* 786 S.W.2d 633, 640 (Tenn. 1990). Because the "rational basis" test is the most deferential form of judicial scrutiny, a reviewing court should uphold a challenged zoning ordinance if there is any possible reason that can be conceived to justify it. *Fallin v. Knox County Bd. of Commr's,* 656 S.W.2d 338, 343-44 (Tenn. 1983).

We find that it is possible to conceive of reasons to justify Ordinance No. 94-1222. The Council could very well have believed that permitting a go-cart track at this location was not as radical a departure from the existing uses of the property as a miniature golf course, driving range, and a batting cage. The Council could also have believed that the surrounding community would benefit from having this type of activity nearby since the property is in the floodplain and surrounded by land zoned for agricultural and low-density residential development, and since the property is located on a major roadway very close to Hickory Hollow Mall, one of Nashville's major commercial activity centers. Under these circumstances, it is not for this court to substitute its judgment for that of the Metropolitan Council. Hence, Ordinance No. 94-1222 survives rational basis scrutiny and thus passes constitutional muster.

## V.

We vacate the judgment and remand the case to the trial court to enable the parties to introduce competent evidence concerning the Metropolitan Council's and the mayor's actions regarding Ordinance No. 94-1222. If the ordinance was enacted in compliance with Metro. Charter §§ 5.02 & 18.02, then the trial court should enter a judgment upholding the validity of the ordinance. We tax the costs of this appeal to the Metropolitan Government of Nashville and Davidson County.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
WILLIAM B. CAIN, SPECIAL JUDGE

NOT PARTICIPATING:

BEN H. CANTRELL, JUDGE