IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 13, 2011 Session

## ODELL BINKLEY v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE

Appeal from the Chancery Court for Davidson County
No. 10693 II      Carol L. McCoy, Chancellor

No. M2010-02477-COA-R3-CV - Filed June 1, 2011

The appellant sought a special exception to establish a waste transfer facility.  The Metro Council, pursuant to its authority under the Metropolitan Code, disapproved of the proposed location.  The appellant sought a writ of certiorari and the trial court dismissed the appeal. The appellant appealed to this court.  We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

William B. Herbert IV and Robert Wheeler Rutherford, Nashville, Tennessee, for the appellant, Odell Binkley.

Lora Barkenbus Fox and Paul Jefferson Campbell II, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

**OPINION**

This matter involves Mr. Odell Binkley's request for a special exception permit to allow a waste transfer station to operate on his property at 3850 Central Pike in Hermitage. The property is zoned "Industrial, Restrictive" ("IR") and a landfill is currently operating there.  A waste transfer facility is permitted in a district zoned IR if a special exception is granted.  The Metropolitan Board of Zoning Appeals ("BZA") grants special exception permits, but in the case of special exceptions for certain unusual uses, such as a waste transfer facility, Metropolitan Government of Nashville and Davidson County ("Metro") requires that the location be approved by the Metropolitan Council first.  Metro Code § 17.40.280.

Mr. Binkley applied for the special use permit in February 2010. On March 16, 2010, Councilman Stanley introduced Resolution No. RE2010-1155 to approve the property's use as a waste transfer facility. When the resolution came up, Councilman Stanley moved to disapprove the location, presenting several reasons therefore, including:

The great majority of property in this district is zoned residential.

The waste transfer station would be on property currently housing a landfill. That landfill is almost filled to capacity. This will be a new, permanent facility to handle waste.

The waste transfer station would be located directly across the river from the Stones River Greenway, "the most extensive greenway Metro Nashville has invested in."

Opening the waste transfer facility is contrary to the Davidson County Regional Solid Waste Plan.

The existing waste transfer facilities in Davidson County have enough capacity to serve the area through 2018.

This is an inappropriate, incompatible use in this part of Davidson County and, once in operation, would operate in perpetuity.

The Metropolitan Council disapproved the resolution by a vote of 34-0. Consequently, under Metro Code § 17.40.280, Mr. Binkley's application for a special exception permit was denied and his application did not go to the Board of Zoning Appeals.

On April 20, 2010, Mr. Binkley filed a petition for a writ of certiorari in the Chancery Court of Davidson County seeking to set aside the council's action. The petition was dismissed and this appeal ensued.

Standard of Review

Under the writ of certiorari, review of the action of the Metro Council is limited to whether it exceeded its jurisdiction or acted illegally, arbitrarily or fraudulently. *McCallen v. City of Memphis*, 786 S.W.2d 633, 638 (Tenn. 1990). This is not so different from the "fairly debatable, rational basis" standard applied to legislative acts. *Id*. at 640. Due to the similarity of standards of review, the Tennessee Supreme Court has held:

While this court recognizes the statutory, procedural distinction between common law certiorari and declaratory judgment, there is no sound logic to maintain different standards of substantive review. Whether the action by the local governmental body is legislative or administrative in nature, the court should refrain from substituting its judgment for the broad discretionary authority of the local governmental body. An invalidation of the action should take place only when the decision is clearly illegal, arbitrary, or capricious.

*Id*. at 641-42. Therefore, we must examine whether the council's decision to disapprove the resolution is clearly illegal, arbitrary, or capricious.

Analysis

Mr. Binkley challenges the council's authority to preclude his application for a special exception from being heard and decided by the Board of Zoning Appeals. He argues that state law does not vest the council with the authority to make special exceptions, and, in fact, vests that authority with the BZA. Mr. Binkley maintains that if the local legislative body creates a board of zoning appeals and allows it to make special exceptions, Tenn. Code Ann. § 13-7-207(2) vests the board with exclusive jurisdiction to do so. Tenn. Code Ann. § 13-7-207(2) vests the board with the authority to "[h]ear and decide, in accordance with the provisions of any such ordinance, requests for special exceptions . . . ."

Metro contends that Tenn. Code Ann. § 13-7-206(a) authorizes Metro to limit the BZA's jurisdiction. Tenn. Code Ann. § 13-7-206(a), in pertinent part, states: "The zoning ordinance may provide that the board of appeals may, in appropriate cases and subject to the principles, standards, rules, conditions and safeguards set forth in the ordinance, make special exceptions to the terms of the zoning regulations in harmony with their general purpose and intent."

When construing statutes, courts are to give effect to the legislative intent. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977). "This legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Id*.

Mr. Binkley's interpretation of Tenn. Code Ann. § 13-7-207(2) ignores the fact that Tenn. Code Ann. § 13-7-206(a) allows the zoning ordinance to permit the BZA to make special exceptions to zoning regulations "subject to . . . conditions . . . set forth in the ordinance." We find that the language of Tenn. Code Ann. § 13-7-206(a) is quite clear and unambiguous. It plainly allows the Metro Council, in its zoning ordinance, to place

conditions upon the BZA's ability to make special zoning exceptions. Thus, the provision of Tenn. Code Ann. § 13-7-206(a) is thoroughly consistent with Tenn. Code Ann. § 13-7-207(2), which indicates the BZA's authority regarding special exceptions must be in accordance with the zoning ordinance.

Mr. Binkley takes issue with the condition the Metro council has established. Metro Code § 17.40.280 places the following condition on the BZA regarding waste transfer facilities: "The specific location of a . . . waste transfer facility . . . shall first be approved by a resolution adopted by the metropolitan council prior to the public hearing by the board of zoning appeals." He argues that no statutory authority vests local legislative bodies with jurisdiction to make special exceptions.

Special exceptions are mentioned in the zoning statutes as a zoning topic that the local legislative body can empower a board of zoning appeals to hear, subject to the provisions of the zoning ordinance. Tenn. Code Ann. § 13-7-207(2). This does not mean that the local legislative body itself has no authority over the matter. State zoning laws "vest[] the local legislative bodies with the prerogative to make final decisions on all zoning matters." *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 964 S.W.2d 254, 258 (Tenn. Ct. App. 1997). "Local governments may decide for themselves how best to exercise the land use control powers delegated by the General Assembly as long as their decisions do not conflict with state law." *Id.* Metro has the authority, under Tenn. Code Ann. § 13-7-201, to regulate "the uses of buildings, structures and land for trade, industry, residence, recreation, public activities and other purposes." This statute provides ample authority for Metro to grant special exemptions.[1]

In sum, under the zoning laws of the state, Metro has authority to zone areas of the county and to make special exceptions to that zoning when it is appropriate under the zoning ordinance to do so. Pursuant to Tenn. Code Ann. § 13-7-206(a), Metro has created a board of zoning appeals to handle this function, with the condition that for certain uses of land requiring a special exception, the Metro Council has retained the authority to approve the location as a prerequisite to board action. Metro Code § 17.40.280.

---

[1]Metro is, of course, a consolidated city-county government. *See* Tenn. Code Ann. § 7-2-101 *et seq.* As such, the Metro government is vested with all the powers of cities under the general laws and all the powers of counties under the general laws. Tenn. Code Ann. § 7-2-108(a)(1)(A) & (B). The authority granted to cities and to counties under the state's zoning laws is basically the same. *Compare* Tenn. Code Ann. § 13-7-101 with Tenn. Code Ann. § 13-7-201; Tenn. Code Ann. § 13-7-107(b) with Tenn. Code Ann. § 13-7-206(a); Tenn. Code Ann. § 13-7-109(2) with Tenn. Code Ann. § 13-7-207(2).

As a fallback position, Mr. Binkley also maintains that, if the Metro Council does have the authority to approve the location of the waste transfer facility, the Metro Council's disapproval of the location was arbitrary and illegal. He argues that (1) the council could only consider the factors found in Metro Code § 17.16.210(C)(1)-(5), (2) the council did not hold a public hearing, (3) the council did not make findings of fact, and (4) the council used an undefined standard not found in the zoning ordinance.

Metro Code § 17.40.280 indicates that the council must approve or disapprove of the waste transfer facility's location "upon finding that the proposed use is consistent or not consistent with the conditions specified in Chapter 17.16, Article III"[2] of the Metro Code. This provision, Mr. Binkley argues, limits the council's consideration to factors 1-5 in Metro Code § 17.16.210(C). The council, he maintains, can only disapprove the application for a special exception for a waste treatment facility if it finds that one of the factors in Metro Code § 17.16.210(C) is not met.

What is the council's duty under Metro Code § 17.40.280? We apply the same rules of construction to ordinances as we do to statutes. *State ex rel. Moore & Assocs., Inc. v. Cobb*, 124 S.W.3d 131, 133 (Tenn. Ct. App. 2003). Therefore, the intent as derived from the ordinary meaning of the language controls. *Worrall*, 545 S.W.2d at 738. Metro Code § 17.40.280 mandates that the council approve or disapprove the "specific location of a . . . waste transfer facility" by determining whether the facility "is consistent or not consistent with the conditions specified in Chapter 17.16, Article III." This language permits the council to consider any criteria within Chapter 17.16, Article III of the Metro Code that may apply to the location of a waste transfer facility. Mr. Binkley focuses on the five factors for waste transfer facilities found in § 17.16.210(C). These provisions deal with site requirements. The concerns listed by Councilman Stanley do not address these matters.

Chapter 17.16, Article III contains other general criteria in § 17.16.150(A)-(J). Two of these criteria seemed particularly important to the council – the effect on other property in the area and compliance with other regulations. *See* Metro Code § 17.16.150(B) & (C).[3]

_____

[2]Article III is entitled "Uses Permitted by Special Exception."

[3] Metro Code § 17.16.150(B) states:

Ordinance Compliance. The proposed use shall comply with all applicable regulations, including any specific standards for the proposed use set forth in this title, unless circumstances qualify the special exception for a variance in accordance with Chapter 17.40, Article VIII. Any accessory use to a special exception must receive express authorization from the board of zoning appeals.

(continued...)

-5-

Councilman Stanley pointed out that the property on which the proposed facility would be located "is right across the Stones River from the Stones River Greenway. That's the most extensive greenway Metro Nashville has invested in. It's put about $ 9 million [in the greenway] and about $450,000 in a boardwalk over the Stones River to extend the Greenway trail." Obviously, there was great concern about the proposed facility's effect on the greenway[4] and a desire to protect or enhance the government's substantial investment. This concern falls squarely within the council's authority under Metro Code § 17.16.150©.

Additionally, the State of Tennessee has enacted an extensive and comprehensive scheme to regulate the disposal of solid waste. *See* Tenn. Code Ann. § 68-211-801 *et seq*. Part of that scheme involves the creation of solid waste region plans. Tenn. Code Ann. §§ 68-211-813(c), -815. Councilman Stanley observed that the creation of a new solid waste transfer facility would

> be in direct opposition to the Davidson County Region Solid Waste Plan that was . . . laid out in December of 2008. It stated that the two existing waste transfer facilities in Davidson County have enough capacity, have adequate capacity, to serve the Davidson County area for the 10-year planning period. So the Metro Council should not consider another waste transfer facility in any district of Davidson County until 2018.

Thus, the approval of the location for a waste transfer facility would be an act deemed by the Davidson County Region Solid Waste Plan as unnecessary. Consideration of adherence to the solid waste plan is permitted by Metro Code § 17.16.150(B). Furthermore, the council could have considered the location of a superfluous waste transfer facility anywhere in the county as detrimental to the public welfare under Metro Code § 17.16.150(C).

---

[3](...continued)
Metro Code § 17.16.150(C) states:

> Integrity of Adjacent Areas. A special exception use permit shall be granted provided that the board finds that the use is so designed, located and proposed to be operated that the public health, safety and welfare will be protected. The board shall determine from its review that adequate public facilities are available to accommodate the proposed use, and that the approval of the permit will not adversely affect other property in the area to the extent that it will impair the reasonable long-term use of those properties. The board may request a report from the metropolitan planning commission regarding long-range plans for land use development.

[4]Councilman Stanley did note that there was a landfill currently operating on the property but that it was going to reach capacity by 2011.

The Metropolitan Council is the legislative body of the metropolitan government. Tenn. Code Ann. § 7-2-108(a)(11); Metropolitan Charter § 3.01. The courts presume that a legislative body is aware of its prior enactments and knows the state of the law at the time it acts. *Leggett v. Duke Energy Corp*., 308 S.W.3d 843, 852 (Tenn. 2010). It cannot be said that the council was unaware of the Stone's River Greenway and its heavy investment in the greenway, or that it was unaware of the Davidson County Region Solid Waste Plan, which was created pursuant to the establishment by the council of the solid waste region. Consequently, the council needed no extra proof regarding these matters.

Mr. Binkley maintains that the council is performing the functions of the Board of Zoning Appeals and, therefore, must hold a public hearing as the BZA is required to do under Metro Code § 17.40.310. First, we note that Mr. Binkley has the process backwards. The delegation of zoning authority goes from the State to the Metro Council, and from the Metro Council, as to special exemptions, to the BZA. In the case of waste transfer facilities, however, the council has retained the authority to approve the location. The Metro Council is exercizing none of the authority of the BZA; it is exercizing its own authority which it chose not to delegate to the BZA.

We have found no requirement that the council must hold a public hearing before it could act upon the resolution. By its own language, Metro Code § 17.40.310 applies solely to the BZA. We note that the record indicates the Public Works Committee and the Planning and Zoning Committee both disapproved of the location for the solid waste transfer facility. The council took up the resolution in a public meeting. The need for the resolution was triggered by the filing of the application by Mr. Binkley. Nothing prevented Mr. Binkley from contacting the committees, Councilman Stanley or any of the other 39 members of the council to make his case.

Mr. Binkley also complains that the council made no findings of fact. Like the requirement of a public hearing, the requirement of findings of fact applies only to the BZA. Metro Code § 17.40.320. The zoning ordinance does not require the council to make findings of fact.[5] A cursory examination of the record reveals what the concerns of the council were.

Finally, Mr. Binkley argues that the council used an undefined standard not found in the zoning ordinance to disapprove the resolution. We reject this view. We have already determined that the council applied the criteria found in Metro Code § 17.16.150(B) & (C).

---

[5]We do not believe the language of Metro Code § 17.40.280 ("upon finding that the proposed use is consistent or not consistent with the conditions specified in Chapter 17.16, Article III . . . . ") requires findings of fact on the part of the council.

The decision of the trial court is affirmed. Costs of appeal are assessed against the appellant, Odell Binkley, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE