# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 7, 2023 Session

## STEVEN SNYDER, ET AL. v. SECOND AVENUE NASHVILLE PROPERTY, LLC, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 22-1014-IV, 23-0159-IV          Russell T. Perkins, Chancellor**

_____

### No. M2023-00498-COA-R3-CV
_____

Neighbors sued to invalidate zoning ordinances that would allow two real estate development projects to be built at significantly taller heights than prior zoning regulations allowed. The trial court dismissed the complaint for failure to state a claim in part because it found that the passage of two zoning ordinances gave the developers vested property rights under the Tennessee Vested Property Rights Act of 2014 (VPRA). We conclude the trial court erred in its application of the VPRA, but we affirm the dismissal of the complaint for failure to state a claim.

**Tenn. R. App. P. 3 Appeals as of Right; Judgment of the Chancery Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which ANDY D. BENNETT and KENNY W. ARMSTRONG, JJ., joined.

Douglas Berry, Jay S. Bowen, and Jacob T. Clabo, Nashville, Tennessee, and Robert F. Parsley, Chattanooga, Tennessee, for the appellants, Steven Snyder, H. Andrew Decker, and R. Gregory Breetz.

Woods Drinkwater, Laurence M. Papel, and Kathryn Skagerberg, Nashville, Tennessee, for the appellees, Second Avenue Nashville Property, LLC, The Congress Group, Inc., Centrum Realty and Development, and CRD 2nd Avenue Owner, LLC.

Lora Barkenbus Fox, Wallace W. Dietz, and Catherine J. Pham, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson Co.

## OPINION

### I.

This appeal stems from a second lawsuit attempting to halt the construction of two new real estate development projects in downtown Nashville. Plaintiffs are residents of City Lights Condominiums, located in the Rutledge Hill neighborhood in downtown Nashville. The City Lights Condominiums are located within a few blocks of the two proposed developments: (1) the Second and Peabody development and (2) the Rutledge Hill development. The Second Avenue Nashville Property, LLC and The Congress Group, Inc. are the real estate developers of the Second and Peabody development, and the Centrum Realty and Development and CRD 2nd Avenue Owner, LLC are the real estate developers for the Rutledge Hill development (collectively the Developers). Each of these projects includes multiple buildings. The Second and Peabody development buildings range from thirty-six stories to eighteen stories. The Rutledge Hill development buildings range from thirty-nine stories to twenty-nine stories.

In 2021, Plaintiffs brought their first lawsuit in opposition to these projects in response to the Metropolitan Nashville Planning Commission approving the developers exceeding the otherwise applicable height restrictions. The trial court ruled against Plaintiffs in the first lawsuit, concluding that the Metropolitan Nashville Planning Commission acted within the scope of its authority. The Plaintiffs appealed. While that case was pending, the Developers submitted applications to the Planning Commission to have their respective properties rezoned under Specific Plan (SP) zoning. The Planning Commission, as required by Metropolitan Code section 17.40.070, reviewed the applications and recommended that the Metropolitan Council adopt both applications as Ordinances. The Metro Council held three hearings on each proposed ordinance before voting to pass each unanimously. Ordinance BL2022-1446 passed 30-0 and turned the Second and Peabody property into an SP zone. Similarly, Ordinance BL2022-1553 passed 34-0 and turned the Rutledge Hill property into an SP zone. Both ordinances allowed the same height for the developments as the Planning Commission previously granted in its height modifications. Both ordinances became effective in December 2022. The terms of these ordinances allowed the buildings to be constructed on the newly rezoned properties to be significantly taller than the standard Downtown Code (DTC) allowed for the areas.

After the passage of these ordinances, the Plaintiffs filed a motion with this court in January 2023 requesting remand to the trial court for consideration of whether the first case was moot. We granted the motion, remanding the case to the chancery court for consideration of the mootness issue. The chancery court found the first case to be moot. We granted the Plaintiffs' subsequent motion to voluntarily dismiss their appeal. *Snyder v. Metropolitan Nashville Planning Commission*, M2022-00722-COA-R3-CV (Tenn. Ct. App. April 27, 2023) (order).

The Plaintiffs filed declaratory judgment actions against each Developer and the Metropolitan Government of Nashville & Davidson County (Metro) to challenge the passage of the SP zoning ordinances. The lawsuits, later consolidated, challenged the

ordinances on two bases. Count I alleged that the height modifications in the SP zones were invalid because they were inconsistent with the General Plan. Tennessee Code Annotated section 13-4-203 authorizes a local government to create a General Plan with a purpose of guiding a city's future growth.[1] Count II alleged that SP zoning cannot be used to change height limits because height limits can only be changed pursuant to the provisions of the Downtown Code (DTC). The Developers and Metro sought to dismiss both counts for failure to state a claim. They raised multiple grounds supporting dismissal.

After a hearing, the trial court dismissed the complaint, finding that Plaintiffs failed to state a claim. In addressing the arguments raised for dismissal, the trial court rejected the contention that the Plaintiffs had failed to timely file their amended complaint in accordance with requirements established in a prior court order. The trial court also concluded that the Plaintiffs had standing to maintain their suit. Addressing the merits of Count I, citing Tennessee's Vested Property Rights Act of 2014 (VPRA),[2] the chancery court found that the valid passage of the two ordinances by a supermajority vote of the Metro Council gave the Developers vested property rights to construct their proposed developments. Additionally, the court observed that an ordinance that conflicts with the General Plan is, nevertheless, valid if passed by a super majority of the Metropolitan Council, as these ordinances were. The trial court dismissed Count I. As to Count II, the court found that the plain language of Metropolitan Code section 17.40.105 allows SP zoning to be "applied to any property." The trial court ruled that because Metro chose to rezone the properties under SP zoning, they were no longer subject to the restrictions of the General Plan, the DTC, or the standard subdistrict zoning. Therefore, the trial court dismissed Count II.

On appeal, the Plaintiffs argue that the trial court erred in dismissing their suit. They assert that the VPRA is inapplicable to the present case because it provides protections against local governments changing standards but does not prohibit private lawsuits by neighbors for violations of law. This is the only argument the Plaintiffs raise on appeal. Addressing the narrowness of their appeal, the Plaintiffs note the trial court's adverse ruling against them was limited to ruling upon this issue. The Developers and Metro argue that the Plaintiffs misunderstand the chancery court's order, which they assert extends beyond the question of the application the VPRA. With regard to the VPRA, the Developers set forth the issue of whether their rights were vested under the VPRA as an issue on appeal, but they offer no legal authority to support the trial court's ruling on this ground. Metro goes further, conceding that the trial court erred in its analysis as to the VPRA. Reaching beyond the issue of the applicability of the VPRA, the Developers argue that, regardless of

---

[1] Article 11, chapter 5, section 11.504(c) of the Metro Charter gives the Planning Commission the authority to create the General Plan. The Planning Commission adopted "NashvilleNext" as Metro's General Plan on June 22, 2015, through resolution No. RS2015-256.

[2] *See* Tenn. Code Ann. §§ 13-4-310 & 13-3-413.

whether the VPRA applies, the Plaintiffs' argument fails because the Metro Council validly passed the two ordinances under its broad authority to control zoning. Metro argues that it acted within its proper authority and in accordance with required procedure in passing the ordinances. Both the Developers and Metro assert that the Plaintiffs failed to grapple with the aspects of the trial court's ruling that extended beyond the VPRA in their briefing. The Developers argue that the Plaintiffs have thus waived objection to these grounds for the trial court's ruling. In their reply, the Plaintiffs contend that the trial court's ruling was limited to the VPRA issue and accordingly that the adequacy of their complaint in connection with the arguments advanced by the Developers and Metro is not properly before this court. Furthermore, the Plaintiffs argue that SP zoning cannot legally conflict with the General Plan and that the Downtown Code (DTC) impliedly repealed SP zoning as to height.

We agree with the Plaintiffs that the VPRA does not prevent them from being able to bring this lawsuit. However, we affirm the judgment of the chancery court dismissing the Plaintiffs' complaint because Metro has the authority to change zoning in a way that conflicts with the General Plan and because SP zoning allows for height modification. Accordingly, the complaint fails to state a claim upon which relief can be granted.

II.

Turning first to our standard or review, a motion to dismiss for failure to state a claim upon which relief can be granted, brought under Tennessee Rule of Civil Procedure 12.02(6), "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011). A ruling upon a motion to dismiss for failure to state a claim presents a question of law, and this court's review is de novo with no presumption of correctness. *Reliant Bank v. Bush*, 631 S.W.3d 1, 6-7 (Tenn. Ct. App. 2021). The complaint should only be dismissed "when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *Elvis Presley Enterprises, Inc. v. City of Memphis*, 620 S.W.3d 318, 323 (Tenn. 2021) (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)). When engaging in this analysis, Tennessee courts are "required to take the relevant and material factual allegations in the complaint as true." *Lind v. Beaman Dodge, Inc.*, 356 S.W.3d 889, 894 (Tenn. 2011). Furthermore, courts are to liberally construe the complaint in favor of the plaintiff when considering a motion to dismiss for purportedly failing to state a claim. *Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004). Additionally, in such circumstances, the plaintiff receives the benefit of reasonable inferences that can be drawn from the pleaded facts. *Webb*, 346 S.W.3d at 426. However, "courts are not required to accept as true assertions that are merely legal arguments or 'legal conclusions' couched as facts." *Id*. at 427. To dismiss based upon failure to state a claim, the motion must be based on the premise that all the material allegations of the complaint, even if true, do not constitute a cause of action. *Lanier v. Rains*, 229 S.W.3d 656, 660 (Tenn. 2007).

- 4 -

III.

In considering the merits, we first address the trial court's ruling as to the applicability of the VPRA to the present case. The trial court, citing Tennessee Code Annotated sections 13-4-310 and 13-3-413,[3] found that upon the adoption of the ordinances the Developers gained a vested property right in connection with the development of their respective properties and accordingly the Plaintiffs could not successfully maintain their suit. As noted above, the Plaintiffs argue that the VPRA is inapplicable to the present case because it provides protections against local governments changing standards but does not prohibit private lawsuits by neighbors for violations of law. The Developers offer at most a conclusory defense of the trial court's ruling on the VPRA issue without providing any legal authority. Metro, alternatively, concedes that the trial court erred with regard to its analysis of the VPRA issue.

When engaging in statutory interpretation, "[w]e consider the whole text of a statute and interpret each word so that no part will be inoperative, superfluous, void or insignificant. We also consider the overall statutory framework. . . . When a statute's meaning is clear and unambiguous after consideration of the statutory text, the broader statutory framework, and any relevant canons of statutory construction, we enforce the statute as written." *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citations and quotation marks omitted). The Tennessee Supreme Court has indicated that, when interpreting statutes, "[t]he text of the statute is of primary importance. . . . A statute should be read naturally and reasonably, with the presumption that the legislature says what it means and means what it says." *Kampmeyer v. State*, 639 S.W.3d 21, 26 (Tenn. 2022) (citations and quotation omitted).

Applying those standards to the VPRA, we find the text to be clear. It states:

A vested property right shall be established with respect to any property upon the approval, by the local government in which the property is situated, of a preliminary development plan or a final development plan where no preliminary development plan is required by ordinance or regulation or a building permit allowing construction of a building where there was no need for prior approval of a preliminary development plan for the property on which that building will be constructed. During the vesting period described in subsections (c) and (d), the locally adopted development standards which are in effect on the date of approval of a preliminary development plan or the date of approval of a building permit, as described by this subsection (b), shall remain the development standards applicable to that property or building during the vesting period.

---

[3] Tennessee Code Annotated section 13-3-413 applies to regional planning commissions; Tennessee Code Annotated section 13-4-310 applies to municipal planning commissions.

Tenn. Code Ann. § 13-3-413(b); Tenn. Code Ann. § 13-4-310(b). Subsection (d) then provides that the vesting period shall be three years. Tenn. Code Ann. § 13-3-413(d)(1); Tenn. Code Ann. § 13-4-310(d)(1). The Act provides that a "vested property right, once established as provided for in this section, precludes the effect of any zoning action by a local government which would change, alter, impair, prevent, diminish, or otherwise delay the development of the property, while vested." Tenn. Code Ann. § 13-3-413(g)(3); Tenn. Code Ann. § 13-4-310(g)(3). This protects a party from a local government changing development rules after approving construction, thus undermining the prior approval. The Act also provides various exceptions, extensions, and other protections. Nowhere in the text of the VPRA, however, is there any indication that the General Assembly placed any limitations on private parties challenging a proposed development for transgressing the law.

Here, the trial court thoroughly explored how the VPRA functions in its final order and found that, upon the passage of the two ordinances, the Developers gained vested property rights. We do not disagree with this conclusion, nor do the Plaintiffs dispute the existence of the vested property rights generally. Rather, the Plaintiffs simply argue that the VPRA has no effect on their private lawsuit. Simply put, nowhere within the text of the VPRA is there any language resembling a restriction on a private party's ability to challenge the approval of a development for transgression of the law. Rather, the VPRA expressly limits the local government's power to change development standards once a party's development rights have vested. Tenn. Code Ann. § 13-3-413(b); Tenn. Code Ann. § 13-4-310(b). While the Developers here may have gained vested property rights upon the adoption of the ordinances, those vested rights themselves have no bearing on the Plaintiffs' ability to bring this lawsuit or to argue that the ordinances themselves violate the law.

IV.

In their respective briefing, both the Developers and Metro assert that this court should affirm the dismissal of Count I, even if the chancery court erred as to its ruling on the VPRA, because the ordinances approving the SP zoning of these two development projects were properly approved by the Metro Council following a favorable recommendation of the Planning Commission and were passed by a super-majority vote of the Metro Council. It is unclear from the chancery court's final order whether it dismissed Count I based solely on the existence of vested rights. As part of its analysis, the chancery court did find that the ordinances were approved in a procedurally valid manner and did address the ability of Metro Council to deviate from the General Plan with regard to zoning decisions. It is clear that the issue of whether Metro Council could deviate from the General Plan was litigated before the trial court, and it also has been raised as an issue and briefed by the parties before this court on appeal.

Count I of the Plaintiffs' complaint rests upon their contention that the SP zoning was "impermissible as being inconsistent with the principles and objectives of the general plan." As set forth and articulated by the Plaintiffs, Count I rises and falls upon the Plaintiffs' contention that the Metro Council cannot adopt an ordinance inconsistent with the Planning Commission's General Plan. Arguing for the invalidity of the SP zoning on this basis squarely presents this court with a question of law, not fact. Accordingly, though the trial court's order was grounded in application of the VPRA, we "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *Pritchett v. Comas Montgomery Realty & Auction Co., Inc.*, No. M2014-00583-COA-R3-CV, 2015 WL 1777445, at *3 n.3 (Tenn. Ct. App. Apr. 15, 2015) (citing *City of Brentwood v. Metro. Bd. of Zoning Appeals*, 149 S.W.3d 49, 60 n.18 (Tenn. Ct. App. 2004)).

The trial court extensively quoted in its final order from this court's decision in *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, in which a private citizen challenged a zoning change based on alleged inconsistency with the General Plan. 964 S.W.2d 254 (Tenn. Ct. App. 1997). In *Family Golf*, this court explained that "any zoning ordinance that conflicts with the general plan or that has been disapproved by the Metropolitan Planning Commission is nevertheless valid if it was enacted in accordance with the super-majority requirements of Metro. Charter § 18.02." *Id.* at 259. If the Planning Commission does not recommend a zoning change, Metropolitan Charter Section 18.02 requires a two-thirds vote of the whole Metro Council if the proposed ordinance is approved by the mayor or a three-fourths if not approved by the mayor. Given that the Metro Council has 40 members, two-thirds equates to 27 votes and a three-fourths vote requires 30. Metro. Charter §§ 3.01, 18.02; *Family Golf*, 964 S.W.2d at 259-60.

In the present case, the trial court specifically found that both proposed ordinances were recommended by the Planning Commission, that BL2022-1446 was passed 30-0, and that BL2022-1553 was passed 34-0. They were also both signed by the Mayor before becoming effective in December 2022. Therefore, the trial court found that the ordinances were passed validly under the requirements of Metropolitan Charter section 18.02. In response, the Plaintiffs argue that SP zoning necessarily requires consistency with the General Plan, pointing the court to language in Metropolitan Code section 17.40.105, which provides the purpose of SP zoning:

> The specific plan (SP) district is an alternative zoning process that may permit any land uses, mixture of land uses, and alternative development standards, of an individual property or larger area, *to achieve consistency with the general plan*. In return, a SP district requires the specific plan to be designed such that, at a minimum, the location, integration and arrangement of land uses, buildings, structures, utilities, access, transit, parking, and streets collectively avoid monotony, promote variety, and yield a context sensitive development.

Metro. Code § 17.40.105 (emphasis added). The Plaintiffs argue that this language requires SP zoning to be fully consistent with the General Plan.

However, the language also expressly allows for "alternative development standards." If an SP zone was required to be identical to the General Plan, and in this case, the DTC, then it could not have alternative development standards, since the development standards would be required to remain fully consistent with the General Plan. Further, section 17.40.106 lays out the procedure required before a property may be rezoned as an SP district. It requires the developer to submit an application to the Planning Commission listing the details of the requested SP district. Metro. Code § 17.40.106(B). The Planning Commission then is required to review a proposed SP district for conformance with the "principles and objective of the general plan." Metro. Code § 17.40.106(D). The Planning Commission then provides a recommendation on the application to the Metro Council. Metro. Code § 17.40.106(D). The Metro Council "shall consider an ordinance establishing an SP district," according to the procedures laid out for amending the official zoning map. Metro. Code § 17.40.106(E).

As the trial court correctly noted, this Court determined in *Family Golf* that the Metro Council has the authority to pass zoning ordinances that are inconsistent with the General Plan as long as the ordinances are passed under the super-majority requirements of Metropolitan Charter section 18.02. The present case is even more favorable than *Family Golf* to the position of Metro and the Developers insofar as the Planning Commission expressly approved of the proposed zoning in this case, having disapproved of the proposed zoning change in *Family Golf*. Here, the Developers each submitted an application to the Planning Commission requesting that their properties be rezoned as SP districts. *See* Metro. Code § 17.40.106(A). The Planning Commission then held public hearings on each application. The minutes from these hearings indicate that the Planning Commission was aware rezoning to an SP district would mean that the "DTC was no longer the zoning," and that it would negate the prior height modification process. The Planning Commission noted that prior SP districts had been used to allow buildings to be taller than the DTC would have allowed and that SP districts are considered "case by case scenarios."

After considering the Second and Peabody proposal, the Planning Commission approved the recommendation by adopting Resolution No. RS2022-201. It approved the recommendation for Rutledge Hill in Resolution No. RS2022-252. By adopting these resolutions, the Planning Commission not only followed the SP zoning procedures laid out in Metropolitan Code section 17.40.106, but it also inherently decided that the zoning change was in line with the General Plan, which itself is simply a resolution passed by the Planning Commission, Resolution No. RS2015-256. This court in *Family Golf* observed that "[t]he planning commission may amend the general plan by resolution at any time. Therefore, the planning commission's approval or disapproval of any proposed zoning ordinance is, in that sense, synonymous with the general plan." 964 S.W.2d at 259 (citation

omitted). The Metropolitan Charter expressly gives the Planning Commission the authority to make, amend, or add to the General Plan. Metro. Charter § 11.504(e). It also expressly permits the Planning Commission to recommend changes to the zoning plan. Metro. Charter § 11.504(h). The Plaintiffs' argument treats the General Plan as if were a constitution chiseled in stone to withstand the pressures of the ages, which the General Plan is most assuredly not. To the contrary, this court has observed that the planning by the Planning Commission "is a continuous process carried out indefinitely through time. Common sense and reality dictate that a general plan 'is not like the law of the Medes and the Persians; it must be subject to reasonable change from time to time' as conditions in the community change." *Family Golf of Nashville, Inc.*, 964 S.W.2d at 258.

Even assuming the SP zoning in the present case is, nevertheless, considered to be inconsistent with the Planning Commission's General Plan, it is unclear on what basis this court's prior ruling in *Family Golf* that Metro Council approval by a super-majority vote prevents an ordinance from being invalidated for being in conflict with the General Plan would be unsettled. Additionally, this court has previously observed that "[g]enerally speaking, the Council has the final say over all issues related to zoning." *Metro. Gov't of Nashville & Davidson Cnty. v. Barry Const. Co.*, 240 S.W.3d 840, 843 n.1 (Tenn. Ct. App. 2007). And, as noted above, here the circumstances are even more favorable as the Planning Commission and Metro have both approved these ordinances. Therefore, we affirm the trial court's dismissal of Count I of the Plaintiffs' complaint.

IV.

With Count II the Plaintiffs sought a declaration that SP zoning could not be used for height modification because the measure providing for SP zoning was superseded by the height modification procedure of the later-adopted DTC. The trial court dismissed Count II based on the plain language of the ordinances themselves. It cited the text of the Metro Code's SP zoning provision, adopted in 2005, which states:

> The SP District is intended to implement the context sensitive development and land use compatibility provisions of the general plan for all land use policies. The district shall be used to promote site specific development in the location, integration, and arrangement of land uses, buildings, structures, utilities, access, transit, parking and streets. A site specific plan shall establish specific limitations and requirements, including any not addressed by this title, so as to respect the unique character and/or charm of abutting neighborhoods and larger community in which the property is located. A specific plan (SP) district may be applied to any property, or within any overlay district established by Chapter 17.36.

Metro. Code § 17.08.020(C). The trial court emphasized the Code's language allowing an SP district to be applied to "any property." The relevant portion of the DTC, a subset of

the overall Metropolitan Code, allows the Planning Commission to determine whether a certain development may utilize the "Bonus Height Program." Metro. Code § 17.37. This was adopted in 2010.

The trial court looked at both provisions and found that once a property is converted into an SP district, it is rezoned and the prior zoning classification ceases to apply. *See Brown v. Metro. Gov't of Nashville & Davidson Cnty.*, No. M2011-01194-COA-R3-CV, 2013 WL 3227568, at \*7 (Tenn. Ct. App. June 21, 2013) (Metro's SP zones are floating zones, a form of "site-specific rezoning"). Because it found that SP zoning expressly applies to "any property," the trial court found that the height modification provisions of the DTC were inapplicable to the proposed developments and dismissed Count II.

The Plaintiffs argue that the SP zoning provision was superseded by the DTC by implication. According to them, because the DTC provision is more specific in providing for a height modification procedure, the SP zoning ordinance was repealed with respect to height modification. In contrast, the Developers and Metro argue that both provisions can and should be read harmoniously.

Repeals by implication "are disfavored in Tennessee." *Falls v. Goins*, No. M2020-01510-SC-R11-CV, 2023 WL 4243961, at \*5 ___S.W.3d __ (Tenn. June 29, 2023) (quoting *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009)). An implied repeal of an older act is only recognized when no fair and reasonable construction will permit them to stand together. *Hayes*, 288 S.W.3d at 337. Under this standard, we do not read the DTC height modification language to repeal the SP zoning ordinance. A fair and reasonable construction of the language does not put the provisions in conflict with each other. Under the DTC, Metro has provided for general height limits and a modification process for those properties within the DTC. SP zoning allows Metro to rezone a specific property and provide it with its own specific zoning regulations that are context-dependent. The Plaintiffs have provided no explanation for why these two provisions cannot simultaneously exist and be utilized in different situations as needed. Accordingly, we agree with the trial court and affirm its dismissal of Count II.

V.

For these reasons, we affirm the trial court's dismissal of the complaint for failure to state a claim.

_____
JEFFREY USMAN, JUDGE