Robert C. KEETON, et ux., et al.,
Plaintiffs-Appellees,

v.

CITY OF GATLINBURG, Tennessee,
Defendant-Appellant.

Court of Appeals of Tennessee,
Eastern Section.

Oct. 11, 1984.

Permission to Appeal Denied by
Supreme Court Jan. 28, 1985.

C. Dan Scott, Sevierville, for defendant-appellant; Hailey, Waters, Sykes & Sharp, Sevierville, of counsel.

Gary R. Wade, Sevierville, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

Plaintiffs' petition to rezone their tract of land lying along Church Street, within the City of Gatlinburg, from R–1, low density residential, to R–2, high density residential, was denied by the city but, in a declaratory action in chancery court, the chancellor entered judgment declaring "the classification by the defendants ... is arbitrary, unreasonable, and without a rational basis and accordingly is ordered reclassified as R–2, high density residential."

The dispute is before us on appeal by the City of Gatlinburg.

The basis of the court's ruling appears in its memorandum as follows:

As the Court has heretofore pointed out, plaintiffs property had previously been zoned R–2 on more than one occasion. No change in circumstances have been

shown to exist to warrant such change from R–2 to R–1 and back and forth as was done.

No subsequent change is shown to exist to justify retaining plaintiffs property as R–1 because of the fact that the streets serving the property are the same as they were before. The conditions are the same, and the adjacent property, the adjoining property already zoned R–2 and has apparently never been changed.

The commercial use of property across Church Street although zoned R–1. [sic] The undenied fact that defendant through land use studies, recognize the needs and the desirability of this property and other adjacent area properties to be best suited for use as R–2, high density, and that such use is consistent with and in furtherance of the best interest of the city.

The subject property was zoned R–2 from 1976 until March 21, 1978, when the property was zoned R–1. In 1980, the Tennessee State Planning Office prepared a long range land use plan for the area and the City of Gatlinburg, acting pursuant to the plan, passed an ordinance on December 22, 1981 in the furtherance of the plan which rezoned plaintiffs' property and other properties in the area from R–1 to R–2. In July, 1982, plaintiffs' property was re-zoned from R–2 to R–1.

■ Where a municipal governing body acts under its delegated police powers in zoning matters, judicial review of such action is restricted by constitutional limitations. The court's inquiry is limited as to whether any rational basis exists for the legislative action and, if the issue is fairly debatable, it must be permitted to stand as valid legislation. *Fallin v. Knox County Bd. of Com'rs*, 656 S.W.2d 338 (Tenn.1983).

The minutes of the city commission meeting denying plaintiffs' petition to rezone gave its reasons for the denial:

[P]etitions from neighbors; inadequate roadways; and, potential for adverse impact on the neighborhood.

Harold Edwards, employed as a city planner by defendant, and previously employed by the Tennessee State Planning Commission, testified:

[M]y observation concerning the re-zoning request were that I did express concern over the limited width of the street. The basis of my concern being that an alteration in the density could result in an increase in traffic flow on an already narrow street. I did express concern over the way the proposed boundary was drawn. I felt that a more comprehensive analysis of the area should be taken into account rather than changing the zoning classification on one side of the street to allow for higher density development when on the other side of the street the zoning classification remained for low density. My observations were also that in the immediate area the neighborhood or the established land use pattern was predominately [sic] a single family residential in nature and that a zoning change to a higher density could have an impact on the established land use pattern there.

This, and other, evidence establishes a fairly debatable issue as to whether the city acted rationally in refusing to rezone the property to a high density residential classification.

Richard O'Brien, who was Gatlinburg's city planner from June, 1980 until September, 1983, in his testimony explained the zoning changes which the chancellor considered capricious. His testimony:

The latest change in zoning, the latter change. The change in 1976 to 1978 rather, was an absolute change in the zoning map. When they adopted a new ordinance they re-evaluated their land use and made decisions and changed the map. What happened in 1982 was an adoption process that was very cumbersome and we had to make changes after the fact of adoption and we had to go back and revise some things. And the map was one of the concerns that caused a referral back to the planning commission again to further re-work the map

before it was finally approved. That's why there was this interim period where we were under the official zoning of a map that was the commission was not satisfied with.

Q. Is that as the result of ordinance 812?

A. Yes.

Q. During that five month period from the time 812 was enacted to the time 830 was enacted, did you all work on the map and re-zone a bunch of areas in that map?

A. There were a lot of properties which were reflecting a different zoning as the result of recommendations made by the Tennessee State Planning Office. Mr. Jim Wagner and he had worked very closely with the City of Gatlinburg. He's the one who had prepared our land use plan that I referenced earlier. I think he had presented a map to the City of Gatlinburg consistent with that land use plan. When the map was thoroughly reviewed, published in the newspaper, concerns were brought to surface that the community wasn't satisfied with.

Q. Not just with Mr. Keeton's property but with property all over the City of Gatlinburg?

A. That's correct. We had tried to recognize previous down zonings and place them back where they were. It was an elimination of rural districts. When it got right down to the final adoption of 830 and the map that had been proposed, which I think reflected this R–2, there was so much discussion and controversy, I think the motion was finally let's put the map exactly like we had it, with the exception of the rural districts being eliminated.

.    .    .    .    .

A. And that's the way it was finally done.

.    .    .    .    .

Q. Which would put Mr. Keeton's property back to R–1?

A. That's correct.

 A municipality, under its police powers, may correct an unwise or erroneous zoning which has been previously established by a comprehensive plan of zoning. *See Barret v. County of Shelby*, 619 S.W.2d 390 (Tenn.App.1981). *Also see* 101A C.J.S., *Zoning and Land Planning*, § 72. Clearly, the city acted within its legislative discretion to change the zoning classification of plaintiffs' property in 1982. Accordingly, we find no basis to reclassify the property by judicial fiat. The judgment of the chancery court is reversed and the cause remanded to enter judgment for the City of Gatlinburg.

All cost of appeal is assessed to the appellants.

PARROTT, P.J., and GODDARD, J., concur.