IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 12, 2024 Session

## THOMPSON SCHOOL ROAD NEIGHBORHOOD ASSOCIATION, ET AL. v. KNOX COUNTY, TENNESSEE, ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 2-246-22 William T. Ailor, Judge**

_____

**No. E2024-00310-COA-R3-CV**

_____

This appeal arises from a declaratory judgment action regarding a decision of the Knox County Commission to amend zoning for the subject property. The trial court affirmed the rezoning. Finding no error, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Daniel A. Sanders, Knoxville, Tennessee, for the appellants, Thompson School Road Neighborhood Association, Ted Reed D/B/A Redeemed Computer Repair, Charles K. Harrell, Jordan Bishop, and Penny Harrell.

Michael W. Moyers, Knoxville, Tennessee, for the appellee, Knox County, Tennessee.

Taylor Forrester, Knoxville, Tennessee, for the appellees, HAM Land Partners, LLC, and I-75 Land Partners.

### OPINION

### I. BACKGROUND

The property subject to rezoning in this action consists of 108 acres located in Knox County at 7921 and 7923 Thompson School Road (the "Subject Property"). The appellants, Thompson School Road Neighborhood Association ("Association"), Ted Reed d/b/a Redeemed Computer Repair, Jordan Bishop, Penny Harrell, and Charles Harrell

(collectively, "Appellants") filed this action for declaratory relief. The Association is a not-for-profit neighborhood group of individuals residing along Thompson School Road. Ted Reed is the sole proprietor of Redeemed Computer Repair, which operates in the vicinity of the Subject Property. The named individuals reside nearby.

At the time of the challenged rezoning decision, I-75 Land Partners, LLC, ("I-75") owned the Subject Property. HAM Land Partners, LLC ("HAM") was added by agreement of the parties because it acquired the Subject Property from I-75 after the filing of this action.[1]

As observed by the trial court in *Benson v. Knox County*, No. E2015-01357-COA-R3-CV, 2016 WL 2866534, at *3 (Tenn. Ct. App. May 12, 2016), the General Plan "outlines a long-range vision and policy framework for physical and economic development" in Knox County. As we observed in that opinion, the General Plan is "advisory in intent," expressly provides that it is "a policy framework for making day-to-day decisions about the timing, location, character and extent of development," and its policies "are not rules." *Id.* at *4.[2]

The record reveals that the General Plan divides Knoxville and Knox County into 12 planning sectors. Sector plans emphasize planning and land use specific to the sector on a 15-year horizon. Knox County adopted the current Northeast County Sector Plan relevant to the matter before us on January 25, 2016.[3] At all relevant times, the Subject Property was designated "rural" under the Knoxville-Farragut-Knox County Growth Policy Plan ("Growth Plan").[4]

As noted by statute, the Growth Plan provides boundaries for urban growth, planned growth areas, and rural areas in the county. *See* Tenn. Code Ann. § 6-58-107(b). Its purpose is to direct the coordinated, efficient, and orderly development of the local government and its environs that will, based on an analysis of present and future needs, best promote the public health, safety, morals, and general welfare. *See* Tenn. Code Ann. § 6-58-107(c). After adoption of a growth policy plan, "all land use decisions made by the legislative body and the municipality's or county's planning commission shall be consistent with the growth plan." *See* Tenn. Code Ann. § 6-58-107(a).

A key feature of all sector plans is the standard land use map and classification table. The General Plan explains:

---

[1] HAM became the fee simple owner of the Subject Property on August 24, 2022.

[2] The General Plan only requires adoption by the local Planning Commission. *See* Tenn. Code Ann. § 13-3-301, *et seq.*

[3] The Knoxville-Knox County Planning Commission created the Northeast County Sector Plan based on a community input process.

[4] The Growth Plan is the only plan that is required to be adopted by a local legislative governing body. *See* Tenn. Code Ann. § 6-5-101, *et seq.*

In 2007, [Planning Commission] developed a standard land use classification table to use in all twelve sectors. The table includes descriptions, location criteria, and recommended zoning for each proposed land use classification (*See* Appendix B). …

**Rural Residential (RR)**
**Very low density residential and conservation/cluster housing subdivisions are typical land uses.**

**Recommended Zoning and Programs:**
County's Rural Area: OS, E, RR (Rural Residential, a new zone with densities of one dwelling unit per acre or less), or PR @ densities of one dwelling unit per acre where dwellings may be clustered in one portion of a subdivision.

The only other zone for consideration in the Rural Residential area is A (Agricultural)—a zoning district with a minimum residential lot size of one acre.

On February 24, 2022, I-75 filed an application for sector plan amendment and rezoning concerning the Subject Property with the Knoxville-Knox County Planning Commission ("Planning Commission"). The sector plan amendment requested a change from AG (Agricultural) to LDR (Low Density Residential). The rezoning application requested a change from A (Agricultural) to PR (Planned Residential) with a density of up to five dwelling units per acre. On April 6, 2022, Planning Commission staff issued a report in connection with I-75's application which recommended amending the sector plan to RR (Rural Residential) and rezoning the property to PR (Planned Residential) at a density of two dwelling units per acre. On April 14, 2022, the Planning Commission, meeting in regular session, voted to approve a sector plan amendment to RR (Rural Residential) and to recommend a rezoning from A (Agricultural) to PR (Planned Residential) at a density of 2.9 dwelling units per acre.

On June 27, 2022, the Knox County Commission ("County Commission") met in zoning session to consider I-75's application. The County Commission first considered the sector plan amendment, followed immediately by the rezoning. During consideration of the sector plan amendment, Kevin Murphy, representing non-party Gibbs Planning Advocates, explained the agricultural designation for the Subject Property was because "there is a strong desire for continued agricultural use and to prevent sprawl in the Northeast Sector." Mr. Murphy observed that the Rural Residential designation would limit rezoning to Planned Residential at "up to one unit per acre." Perceiving Mr. Murphy's objection to density higher than one dwelling per acre, County Commission Chair Richie Beeler questioned Planning Commission Executive Director Amy Brooks as follows:

Chairman Beeler: Thank you, Mr. Murphy. … Uh, Ms. Brooks, I want to clarify, is, is Mr. Murphy's assertion correct that a Rural Residential in the Rural Area is recommended at one unit per acre?

Amy Brooks: The recommendation in the Sector Plan does speak to that, um, for the Northeast County, **but I would, um, bring to your attention the Growth Policy Plan, which I think is the controlling plan in this situation**, and if you look at, um, Section 3.5, Extensions of Low Density Residential Development, densities of, of one to three dwelling units per acre into the Rural Area shall be limited to certain conditions, which is zoned Planned Residential, have sewer and public water services and connecting, uh, via collector arterial roads to the Urban Growth Boundary to Planned Growth Area.[5]

Chairman Beeler: Okay. Thank you, Ms. Brooks.

(Emphasis supplied). After additional discussion, the County Commission voted 9-1 to amend the Northeast County Sector Plan land use designation for the Subject Property from A (Agricultural) to RR (Rural Residential).

With the Rural Residential land use designation in place, County Commission considered I-75's request to rezone the property to PR (Planned Residential) at up to 2.9 dwellings per acre. Mr. Murphy once again objected to the requested density:

Mr. Murphy: The Northeast County Sector Plan is an element of the County General Plan, and therefore, zoning…amendments for the Northeast Sector must be consistent with the Northeast County Sector Plan…. [T]here's a

---

[5] The provision 3.5 in the Growth Plan specifically provides as follows:

Extensions of low density residential development (densities of 1 to 3 dwelling units per acre) into the rural area shall be limited to the following conditions: (a) the property must be zoned Planned Residential (PR); (b) provision of sanitary sewer and public water services; (c) connecting collector and arterial roads from the proposed development to the Urban Growth Boundary or Planned Growth Area which meet the standards of the Knox County Engineering and Public Works Department or its successor; and (d) a traffic impact analysis demonstrating to the satisfaction of the planning commission that the effect of the proposed and similar developments in the traffic analysis zone will not unreasonably impair traffic flow along the arterial roads through the adjacent Planned Growth Area. The intent of this section is to allow extensions of low density residential development into rural areas when urban services (sanitary sewer, water, and adequate roads) become available. These areas should be reclassified "Planned Growth" when the growth plan is periodically revised and amended.

The Appellants observe in their brief that this language permits the extension of higher densities into rural areas when certain conditions are met but does not require such extensions.

section for the Rural Residential land use…which is what you just adopted for this parcel. And there's a table of recommended zoning programs, which says, "For the County's rural area…Planned Residential at density is at one dwelling unit per acre when dwellings may be clustered in the portion of the subdivision." It says… "Other zonings to consider are A in the Growth Plan's [Rural] area." So, a rezoning does need to…comply with this. Now, I just heard the argument brought up that, well, the Growth Plan…allow[s] up to three units an acre, and it does say, yes, "Extensions of low-density residential development of one to three dwelling unit per acre can be allowed."…[But the plans are] a funnel…[Y]ou start with the Growth Plan at the top. That's your most general policies. Your next level is the General Plan. Finally, you get to the Sector Plan, and that's where, in the Sector Plan, it says that there's a conscious choice here to actually limit to, to one…The Sector Plan says, "up to one is what we allow." The Grow-, General Plan and Growth Plan allow up to three, but this Sector Plan, which is the most specific that applies here says, "up to one." So, I think for your rezoning, you actually have a requirement in the zoning ordinance to be consistent. [A rezoning] needs to follow the land use classification table. I would argue that anything that's not Open Space, Estate or PR at one dwelling unit per acre…won't be consistent with the Northeast County Sector Plan. Thank you.

Mr. Murphy provided the County Commissioners with printouts of section 6.30.01 of the Zoning Ordinance and sections of the Northeast County Sector Plan. After some additional deliberation, the County Commission voted to rezone the Subject Property from A (Agricultural) to PR (Planned Residential) at a density of 2.9 dwelling units per acre.

On August 26, 2022, the Appellants filed this action seeking declaratory relief. They argue that the rezoning from Agricultural (A) to Planned Residential (PR) at a density of up to 2.9 dwelling units per acre was illegal because the density of 2.9 dwellings per acre is inconsistent with the recommended density of one dwelling unit per acre set out in the Northeast County Sector Plan.

After a hearing was held on January 4, 2024, the trial court granted summary judgment in favor of the Appellees, ruling that the County Commission's rezoning decision was consistent with the applicable legal statute. The trial court found "that the Commission had a rational basis for its decision." The Appellants filed this timely appeal.

## II. ISSUES

The issues raised by the Appellants are restated as follows:

1. Whether the County Commission's decision to rezone the Subject Property from Agricultural (A) to Planned Residential (PR) at a density of 2.9

dwelling units per acre was illegal under Tennessee Code Annotated section 13-3-304(b)(1)[6] due to its inconsistency with the Northeast County Sector Plan's recommendation of one dwelling unit per acre.

2. Whether the trial court erred in interpreting Tennessee Code Annotated section 13-3-304(b)(1) by ruling that the County Commission could disregard the Northeast County Sector Plan's recommendations when rezoning the Subject Property.

3. Whether the trial court erred in granting summary judgment to the Appellees by failing to view the evidence in the light most favorable to the Appellants.

4. Whether the trial court's reliance on *Benson v. Knox County* was improper.

5. Whether the County Commission's rezoning decision was illegal due to the reliance on incomplete and incorrect legal advice that caused the Commission to misinterpret the applicable legal standards, thereby discounting valid objections to the rezoning.

The Appellees raise the issue that the Appellants' appeal is frivolous and move to recover their costs, expenses and attorney fees incurred as a result of the appeal, pursuant to Tennessee Code Annotated section 27-1-122. *See First Cmty. Mortg. v. Appraisal Servs. Grp.*, 644 S.W. 3d 354, 367 (Tenn. Ct. App. 2021).

### III. STANDARD OF REVIEW

"Amending a zoning ordinance is a legislative act … intended to protect the health, safety, and welfare of the citizens living in the community covered by the ordinance." *Cato v. The Montgomery Cnty. Bd. of Com'r*, No. M2001-01846-COA-R3-CV, 2002 WL 1042179, at *2 (Tenn. Ct. App. May 23, 2002) (citations omitted). Legislative bodies are given "broad discretion in enacting or amending zoning ordinances." *Family Golf of Nashville, Inc. v. Metro. Gov't of Nashville*, 964 S.W.2d 254, 260 (Tenn. Ct. App. 1997). In the present case, there is no dispute that the County Commission acted in a legislative capacity.

---

[6] Tennessee Code Annotated section 13-3-304 provides that

> [i]f the legislative body adopts [a] general regional plan in the form of an ordinance by the municipality or a resolution by the county, then any land use decisions thereafter made by the legislative body, planning commission or board of zoning appeals … must be consistent with the general regional plan.

Tenn. Code Ann. § 13-3-304(b).

The Tennessee Supreme Court decision of *McCallen v. City of Memphis*, 786 S.W. 2d 633, 641–642 (Tenn. 1990) described the standard of judicial review of legislative action as follows:

> When the act of a local governmental body is legislative, judicial review is limited to "whether any rational basis exists for the legislative action and, if the issue is fairly debatable, it must be permitted to stand as valid legislation."

*Id.* at 640 (quoting *Keeton v. City of Gatlinburg*, 684 S.W. 2d 97, 98 (Tenn. Ct. App. 1984)). This "fairly debatable rational basis" standard is applicable when a court reviews local governmental action to amend "a comprehensive zoning ordinance to change the classification of a specific tract," as in the present case. *See Benson*, 2016 WL 2866534, at *5 (quoting *McCallen*, 786 S.W. 2d at 639-640). The limited standard of review of such legislative action was recently explained as follows:

> Inasmuch as zoning laws are in derogation of the common law and operate to deprive a property owner of a use of land that would otherwise be lawful, such laws are to be strictly construed in favor of the property owner. "Legislative classification in a zoning law, ordinance or resolution is valid if any possible reason can be conceived to justify it." As we found in *McCallen v. City of Memphis*, "the court's primary resolve is to refrain from substituting its judgment for that of the local governmental body. An action will be invalidated only if it constitutes an abuse of discretion. If 'any possible reason' exists justifying the action it will be upheld." Stated another way, "'in cases where the validity of a zoning ordinance is fairly debatable, the court cannot substitute its judgment for that of the legislative authority.'" We must favor "permitting the community decision-makers closest to the event to make the decision." Therefore, "the exercise of zoning power should not be subjected to judicial interference unless clearly necessary."

*City of Orlinda v. Robertson Cnty.*, No. M2021-01505-COA-R3-CV, 2023 WL 1498765, at *3 (Tenn. Ct. App. Feb. 3, 2023) (citations omitted).

As for the trial court's findings of fact, our review is *de novo*, and we presume that the findings are correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Id.*

# IV. DISCUSSION

## A.

The Appellants' primary argument in this appeal is that the County Commission violated Tennessee Code Annotated section 13-3-304(b)(1), which required a zoning change to be consistent with the General Plan. They argue that the density of 2.9 dwellings per acre is inconsistent with the recommended density of one dwelling unit per acre set out in the Northeast County Sector Plan.

In this state, courts "attach great significance to the local officials' prior interpretations of an ordinance." *Benson*, 2016 WL 2866534, at *8; *Whittemore v. Brentwood Planning Comm'n*, 835 S.W. 2d 11, 16 (Tenn. Ct. App. 1992); *see also State v. West*, 246 S.W. 3d 569, 579 (Tenn. Ct. App. 2005) (interpretations of zoning ordinances "are best left to local officials"), and *City of Jackson v. Shehata*, No. W2005-01522-COA-R3-CV, 2006 WL 2106005, at *5 (Tenn. Ct. App. July 31, 2006) ("courts reviewing either zoning ordinances or the administrative decisions implementing zoning ordinances are inclined to give wide latitude to the responsible local officials"). In *Benson*, we stated that "the record before us reveals the local zoning officials have always interpreted and applied the density recommendations … and other provisions of the General Plan and Sector Plan as advisory and nonbinding …." 2016 WL 2866534, at *8. Ms. Brooks stated as follows in support of the Appellees' motion for summary judgment:

> 6. When reviewing a rezoning request for a property, Professional Staff considers the policies of the Growth Policy Plan, the guidelines expressed in the General Plan and the Zoning Ordinance. Professional Staff relies on the General Plan and its component parts such as applicable sector plans as guidance. . . . [T]he review and recommendations of the Professional Staff for a rezoning is not limited to the "zoning recommendations" set forth in the General Plan.

> 7. Professional Staff routinely reviews similar requests and has recommended rezonings to PR (Planned Residential) at densities between 2 and 3 du/ac for property in the Rural Area that as a RR (Rural Residential) sector plan designation when the property meets the policies of the Growth Policy Plan.

The General Plan contains express language reflecting the advisory nature of the land use classifications. The density limitations are expressly *recommendations*, not *requirements*. As the trial court ruled: "the density recommendations are just as stated, recommendations." Therefore, the County Commission's decision to allow a higher density was consistent with the General Plan, as required by the statute. We find that the

density provisions are only advisory and the County Commission's decisions were consistent with all the applicable plans.

## B.

The Appellants further argue that the County Commission's legislative rezoning decision was based on "incorrect" or "incomplete" advice. They assert the rezoning decision was illegal because the County Commission misapplied or misinterpreted the consistency requirements set forth in Tennessee Code Annotated sections 6-58-107(a) and 13-3-304(b)(1). According to Appellants, Ms. Brooks improperly advised the Commissioners that a provision of the Growth Plan permitting a density of up to three dwellings per acre was "controlling." They assert that both the Growth Plan and the Northeast County Sector Plan are "controlling" in connection with the rezoning in this matter. They contend, by describing the Growth Plan as "controlling," Ms. Brooks caused the Commissioners to disregard legitimate objections to any density exceeding one dwelling unit per acre.

The evidence in this case establishes that the County Commission received comprehensive advice regarding the issue before us. During the course of the meeting on June 27, 2022, the County Commission received advice and argument from multiple sources. Mr. Murphy, in particular, spoke to the Commission in opposition to the application to rezone the Subject Property. He furnished the County Commission with a packet of information and spoke extensively in opposition to the requests for both the Northeast County Sector Plan amendment and rezoning. Mr. Murphy advised County Commission of the General Plan recommendations, stating:

> The Northeast County Sector Plan is an element of the County General Plan, and therefore, zoning and text map amendments for the Northeast Sector *must be consistent* with the Northeast County Sector Plan.

(Emphasis added). Mr. Murphy then drew the County Commission's attention to the provisions of the Northeast County Sector Plan, stating:

> There's a table of recommended zoning programs, which, uh, say, "For the County's rural area, Open Space, Estate, Rural Residential" . . . "The Planned Residential at density is at one dwelling unit per acre" . . . So, a rezoning does need to, you know, needs to comply with this.

Mr. Murphy further argued that the General Plan took precedence over the Growth Plan. He told the County Commission:

> The Sector Plan says, "up to one is what we allow." . . . This Sector Plan, which is the most specific that applies here says, "up to one." *So I think for*

> *your rezoning . . . you actually have a . . . requirement in the zoning ordinance that . . . . it needs to follow that land use classification table.*

(Emphasis added). Mr. Murphy concluded that allowing more than one unit per acre "won't be consistent with the Northeast County Sector Plan." In view of the information and argument furnished by Mr. Murphy, the evidence establishes that the County Commission was made aware of the General Plan provisions, including the recommended density of one unit per acre.

Ms. Brooks stated to the Commission: "I would . . . bring to your attention the Growth Policy Plan, which I think is the controlling plan in this situation . . . ." This statement was made in connection with the application for the sector plan amendment, not rezoning. Despite qualifying her statement with "I think," reflecting some degree of uncertainty, Ms. Brooks was correct: the General Plan did control the housing density for the Subject Property. However, at no point did Ms. Brooks instruct the County Commissioners that they had to rezone the Subject Property to PR (Planned Residential) at a density of up to 2.9 dwelling units per acre. She explained that she believed Section 3.5 of the Growth Plan allowed for the extension of low density residential development into the Rural Area at densities between one dwelling unit per acre and three dwelling units per acre.

In accordance with Tennessee Code Annotated section 6-58-107(a):

> After a growth plan is so approved, all land use decisions made by the legislative body and the municipality or county's planning commission shall be consistent with the growth plan.

Therefore, the Growth Plan noted by Ms. Brooks was "controlling," as provided by the statute. Unlike the General Plan, the Growth Plan used mandatory language in its density requirements. Nonetheless, the County Commission considered the applicability of both plans during the June 27 meeting. There is no evidence that the County Commission made its decisions with "incomplete" or "incorrect" advice.

### C.

The evidence in the record establishes that the County Commission considered the "surrounding area" and based its decision to rezone the Subject Property on at least "fairly debatable" grounds. The declaration of Ms. Brooks summarized the factors that justified the County Commission's decision to rezone the Subject Property at more than one unit per acre. Section 9 of the declaration stated:

> Professional Staff determined that the Growth Policy Plan, the development policies in the General Plan and the Zoning Ordinance support a density of

- 10 -

more than one (1) dwelling unit per acre, when considering: (i) the recent trend in residential development in the area; (ii) several nearby properties had recently been rezoned Planned Residential at densities of 4 or more dwelling units per acre, and in fact, the adjacent parcel had been recently rezoned Planned Residential at a density of up to five (5) dwelling units per acre; (iii) the area has adequate infrastructure, including sanitary sewer, water, and adequate roads; (iv) the close proximity of the Subject Property to Gibbs Elementary School and the new Gibbs Middle School which was built in 2019; and (v) the Subject Property is adjacent to property designated in the Planned Growth Area.

Ms. Brooks further noted that:

> Professional Staff opined that the Subject Property could serve as a transition between the adjacent parcels that were rezoned to Planned Residential at densities of 4 and 5 dwelling units per acre and the more rural properties.

It appears to the court that the County Commission used a "rational basis" to reach its decisions and the justification for rezoning was at the very least "fairly debatable." *See McCallen*, 786 S.W. 2d at 640. The County Commission's decision to rezone the Subject Property to PR (Planned Residential) at a density of up to 2.9 dwelling units per acre is consistent with the policies of the Growth Plan and the General Plan which contemplate a density between one and three dwelling units per acre for property in Rural Areas with infrastructure (urban services). The local zoning officials have always interpreted the density recommendations of the plans as advisory and nonbinding. *See Benson*, 2016 WL 2866534, at *8.

### D.

The parties filed competing motions for summary judgment and a hearing was held. The Appellants suggest that in granting summary judgment to the Appellees, the trial court failed to "view the evidence in the light most favorable to" the Appellants, as there was "clear language of the sector plan that limited development density to one dwelling unit per acre in the Rural Residential area." Tenn. R. Civ. P. 56.04; *see Huggins v. McKee*, 500 S.W.3d 369, 365 (Tenn. Ct. App. 2016) (noting that we must "view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor.").

As we discussed above, the word "recommended" as used in the General Plan did not mean "required." The General Plan did not include a density requirement for Planned Residential zoning in the Rural Residential area. It only made a recommendation. The trial court interpreted the word "recommended" as a matter of law. *See Coffee County Bd. of Ed. v. City of Tullahoma*, 574 S.W. 3d 832, 839 (Tenn. 2019) ("Issues of statutory

- 11 -

interpretation are questions of law . . . .”). Accordingly, the case was suitable for resolution on a motion for summary judgment.

**E.**

The Appellees have moved for attorney fees on the grounds that the appeal is frivolous. Tennessee Code Annotated section 27-1-122 provides for the award of attorney fees when a party is required to respond to a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122; *First Cmty. Mortg.*, 644 S.W.3d at 367-368. “Determining whether to award [section 27-1-122] damages is a discretionary decision.” *Id.* at 368; *see Young v. Barrow*, 130 S.W.3d 59 (Tenn. Ct. App. 2003). We decline to find that this appeal is frivolous for purposes of awarding damages under section 27-1-122.

## V. CONCLUSION

For the foregoing reasons, we affirm the holding of the trial court. Costs of this appeal are assessed against the Appellants, Thompson School Road Neighborhood Association; Ted Reed D/B/A Redeemed Computer Repair; Charles K. Harrell; Jordan Bishop; and Penny Harrell.

_____
JOHN W. MCCLARTY, JUDGE